### YOUNG v. FOX.

(Supreme Court, Appellate Division, First Department. February 11, 1898.)

1. LIBEL—JUSTIFICATION.
     In order to justify a libelous publication, the proof must be as broad as the charges.

2. SAME—EVIDENCE.
     On appeal from a judgment for plaintiff in an action of libel, defendant contended that the justification pleaded had been fully proved. The libel consisted of statements in a newspaper article purporting to describe an occasion when plaintiff, a married woman, was at an hotel with a man not her husband. While certain of the facts stated were admittedly true, numerous others, of a sensational and grossly libelous character, were, according to plaintiff's testimony, as credited by the jury, entirely false. *Held*, that the claim of justification of the libel was not supported.

3. SAME—MATTER LIBELOUS PER SE.
     Where the nature of the subject-matter of an alleged libel is such as to warrant the conclusion by any person reading it that, if true, it tends to show meretricious relations between a married woman and some other man than her husband, it constitutes, as against her, a libel per se.

4. SAME—PUNITIVE DAMAGES.
     Punitive damages are not limited to cases of actual malice, but may be awarded for a libel recklessly or carelessly published, as well as for one induced by personal ill will.

5. SAME—EVIDENCE OF RECKLESSNESS.
     Where a paper publishing a libel is issued only weekly, and the publisher, before issuing it, circulates in the community where the person libeled resides, a "dodger" calling attention to the forthcoming article, the facts show both deliberation and opportunity for investigation, and, in the absence of evidence of inquiry, warrant a finding of recklessness and carelessness.

6. SAME—EXCESSIVE DAMAGES.
     In an action of libel, in which the jury found on competent evidence that the false and grossly libelous statements complained of were made recklessly, without inquiry into their truth, and were heralded by a "dodger" calling

attention to them, and awarded plaintiff $25,000 damages, *held*, that the verdict could not be set aside as excessive.

**7. SAME—MITIGATION OF DAMAGES.**

Evidence in mitigation of a libel goes only in reduction of exemplary, and not of actual or compensatory, damages.

**8. SAME—EVIDENCE.**

At the trial of an action of libel based on a newspaper article, defendant's counsel asked plaintiff whether she remembered the issue of a certain other newspaper, of earlier date, containing a certain article (the unexpressed theory being that the latter article was the source of the one complained of.) *Held* that, standing alone, the fact as to plaintiff's recollection was irrelevant, and the question properly excluded.

**9. APPEAL—EXCEPTIONS TO INSTRUCTION.**

A verdict should not be set aside on appeal as the result of an exception taken blindly to an entire proposition of law embodied in the judge's charge, but which, upon appeal, is directed solely against a single word employed to characterize an admission in the pleadings, to which the judge's attention was not directed, either before the jury retired or when the exception was taken.

**10. SAME—HARMLESS ERROR.**

In an action for libel, plaintiff's counsel, in his opening statement, mentioned the fact of the conviction for conspiracy of two persons connected with the matters alleged in the libel, but for whose acts defendant was not accountable, and the judge instructed the jury not to be influenced thereby. Thereafter the counsel attempted to call out from witnesses evidence of such conviction, upon the theory that it was material, but objection to the questions was sustained. Counsel had not been instructed by the judge that he was not entitled to ask the questions. *Held* that, in view of his theory, he was entitled to put his questions, and have them ruled on, and that the instruction to the jury, reiterated in the charge, cured any possible injury or prejudice to defendant.

Ingraham and McLaughlin, JJ., dissenting.

Appeal from trial term.

Action by Emma B. Young against Richard K. Fox. From a judgment in favor of plaintiff for $25,000 entered on a verdict, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

On or about the 30th day of October, 1889, there was published in a weekly periodical, called the "National Police Gazette," then owned and controlled by the defendant, the following, purporting to be a true account of an occurrence said to have taken place at the Hamilton House, an hotel in Paterson, N. J., a few days prior thereto:

"Was It a Vile Plot?

"A Midnight Surprise Party in a Paterson, N. J., Hotel.

"A Door-Smashing Seance.

(Subject of Illustration.)

"Mrs. Richard D. Young, of Montclair, N. J., is a very much abused woman,— or the opposite. Two men recently entered the Hamilton House, in Paterson, N. J., the largest hotel there, and registered as John W. Allen and F. Morrey, of New York. Allen appeared to be laboring under much mental excitement. At 5 o'clock a handsome equipage drove up to the hotel, and a man and woman, both fashionably attired, alighted. They registered as William Allen and wife, of Montclair. They were assigned to room 20, which adjoins the one occupied by the first-named guests. They soon came down and had supper. John W. Allen and Morrey kept their room. About 10 o'clock the man and woman retired to their room. Two hours later loud voices were heard in the hall, followed by the crash of a door. A woman's screams followed, and then all was confu-

sion.   The man who had registered as William Allen, partly dressed, rushed down-stairs, leaving his valise behind, and, hastily summoning his carriage, drove rapidly away.   The woman was the wife of John Allen.   According to the woman's story, John Allen is not her husband's name, but Richard D. Young, who assumed the name of Allen to gain his ends.   Mrs. Young had been sep-arated from her husband for some time past.   A couple of weeks ago a young man, giving his name as Melano C. Richardt, applied for board at Mrs. Young's mother's house, where Mrs. Young had been stopping since her separation from her husband.   He was accommodated, and appeared to be very agreeable.   On the day that the scene occurred in the Hamilton House, he asked Mrs. Young to take a drive with him.   She consented, and the two started for Hackensack, with the results mentioned above.   The lady's side of the story is as follows: Richardt pretended to lose the road, and drove on and on, finally stopping at an hotel.   It was the Hamilton House, in Paterson.   He insisted on her going in for supper.   His whole demeanor had changed.   The more she begged to be driven home, the more he insisted.   They went into the restaurant, and he ordered oysters.   The waiter must have been his tool, for the service was so wretched that they left the table, and went to the parlor, where Richardt ordered a bottle of champagne to be brought.   They refused to serve it in the parlor.   Mrs. Young begged to be taken home, but Richardt said she should not go a step until the wine had been drunk.   They must go to a sitting room upstairs.   Mrs. Young, unwilling to create a scene, went up with him.   He opened a door, and she started back.   There was a bed in the room.   Richardt explained that it was a country hotel, and that things were not arranged as in the city.   Behind them was the waiter with the champagne.   They entered.   The wires of the bottle were already out.   The cork came out without noise.   Mrs. Young drank a glass-ful of the stuff.   Richardt put his feet on the foot of the bed, and exclaimed loudly:  'This is the happiest day of my life!'   Mrs. Young became suddenly ill, and Richardt induced her to lie down, and, before she was aware of his inten-tions, turned out the gas.   At that instant Young and his friend smashed in the door, and entered, Young exclaiming exultingly:  'Now, at last I have caught you!'   Mrs. Young saw through the plot.   Her strength returned, and there was a terrible scene.   Richardt disappeared, and she forced her husband to drive her home to Montclair, though at first he insisted on holding her there a prisoner. Before going he paid Richardt's bill."

In the same paper containing this account, upon the last and out-side page, were certain drawings or sketches purporting to picture certain of the incidents described in the printed article.   Across the front of the title page of this periodical were printed the words, "Fun in a Paterson, N. J., Hotel."   At the date of publication, the plain-tiff was living, and for some time prior thereto had lived, in the town of Montclair, N. J., with her mother and her children, separate and apart from her husband, one Richard D. Young.   Prior to the ap-pearance of the number of the National Police Gazette containing the article and pictures referred to, the defendant caused to be dis-tributed in Montclair, where the plaintiff resided, a circular or "dodger," calling the attention of the public to the edition of his paper which would be out on Wednesday, October 30, 1889.   The purpose of this action was to recover damages claimed to have been suffered by the plaintiff by reason of the publications alleged in the complaint to be false, scandalous, and libelous.   The defense was that the pub-lication complained of was a fair and true report of the facts in con-nection with the plaintiff's visit to the hotel in Paterson, N. J., at the time mentioned, and that the article was not published mali-ciously, or with any intent to injure the plaintiff, but was published by the defendant as a matter of news and general interest to the pub-lic, in the belief that the same was true.   At the close of the plain-

tiff's case, and again at the close of the entire case, motions were made to dismiss the complaint, which were denied, to both of which denials exceptions were taken, and, the matter having been submitted, under the judge's charge, to the jury, they returned a verdict in the plaintiff's favor; and it is from the judgment entered thereupon that this appeal is taken.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Benjamin F. Tracy, for appellant.
John J. Adams, for respondent.

O'BRIEN, J.   Although many grounds are urged for a reversal of the judgment, the principal ones are (1) that the justification pleaded by the defendant was proved in every essential particular; (2) that the court erred in charging the jury that the defendant's publication was libelous per se; and (3) that the court erred in its charge to the jury upon the subject of punitive damages.

It was made to appear that many of the incidents related in the article actually occurred.   It is conceded that on the day in question the plaintiff, with a young man, named Richardt, left Montclair, N. J., some time about 5 o'clock in the afternoon, and drove to Paterson.   It would appear that the plaintiff and her husband were living apart, and that the latter, with a view of obtaining evidence against her, had induced Richardt to go to her mother's house, where she lived, and obtain board, which he did, having been there about six weeks prior to the event chronicled, during which time, by assiduous attentions to the plaintiff's children—among other things, by taking them out riding—he ingratiated himself with the plaintiff. On the day in question the children had been out riding with Richardt, and he returned with them to the plaintiff's mother's house, where they alighted; and then, as the plaintiff testified, upon Richardt's invitation, she got into the wagon for the purpose of taking a short ride of five or ten minutes, intending to return in time for 6 o'clock supper; but, having got her into the wagon, Richardt, claiming that the horses were unmanageable, and permitting them to run, drove to Paterson.   Whether, on arriving there, he went directly to the hotel or to a stable was one of the disputed questions of fact.   Prior to their arrival, at about 2 o'clock on the same afternoon, the plaintiff's husband, with a friend, had reached the hotel, and secured two adjoining rooms, and, in anticipation of the plot which had been arranged for in reference to his wife, registered for Richardt and the plaintiff in the hotel register as "Mr. and Mrs. William Allen."   As nearly as can be determined from the evidence, it was in the neighborhood of 6 o'clock when the plaintiff and Richardt arrived at the hotel, which they entered by the main entrance, and proceeded to the restaurant, where oysters were ordered.   While the plaintiff was in the restaurant, Richardt succeeded in communicating with the husband; and upon returning to the restaurant, having complained about the oysters and the service, insisted on having a bottle of wine.   This, the plaintiff testified, she protested against,

asking of Richardt that he immediately take her home, but he told her that he would not comply until he had had the bottle of wine. It being a Sunday night, and the waiter refusing to serve the wine either in the dining room or the parlor downstairs, Richardt requested the plaintiff to go with him, as she states, to an upstairs parlor, where they could have the wine, he promising then to return home with her. Just what time was spent in the restaurant does not appear, but it is established beyond cavil that all the occurrences in the hotel on that evening, up to the disappearance of Richardt, were over by 8 o'clock, although it may have been some time after that before the husband took the plaintiff back to Montclair to her mother's house. According to the plaintiff, upon arriving at the door of the room upstairs, which was a small room, with a bed and table in it, Richardt pushed her in, immediately locking the door, but opening it a few minutes afterwards, to permit the waiter to hand in the bottle of wine and some cigars. From the bottle he poured out a drink for himself and about half a glass for the plaintiff, which she testifies is all she would take, and, feeling sick as the result of her experience, she sat down for a moment on a chair, when Richardt, who, according to the waiter's testimony, had removed his coat, suddenly turned out the gas, and at that moment went into the adjoining or connecting room, in which the husband and his friend were, and disappeared from the scene, whereupon the husband entered. Then followed a scene between the husband and wife, which, as has been stated, was all over, so far as its violent character was concerned, by 8 o'clock; and some time thereafter the husband took the plaintiff to her mother's house.

It is conceded that the whole thing was an infamous plot on the part of Richardt and the husband to place the plaintiff in a questionable position. But, as was properly stated by the trial judge, for the injury which she suffered at the hands of Richardt and her husband the defendant was in no way responsible. His responsibility, if any, depended upon his giving, if he entered upon the subject at all, a truthful account of what occurred, and he was bound to show that the publication made and the pictures which purported to delineate the incidents narrated were true, made in good faith, and justifiable. Comparing what actually occurred with what was published, it will be noticed, if the plaintiff's testimony is to be believed, that she and Richardt did not arrive at the hotel at 5 p. m.; that Richardt did not register; that they did not go to room 20, and then go down to supper, and did not return to the room at 10 o'clock, and remain for two hours, or until midnight; that there were no woman's screams, followed by the crash of a door; neither did any door-smashing take place; and that Richardt, alias William Allen, did not escape from the room partly dressed, and did not leave his valise behind, for the reason that he had none. Crediting the plaintiff's story, in these respects the article was false and untrue. In view of the verdict, we must assume with respect to the disputed questions of fact that the jury credited the plaintiff; and, taking her version, it is certain that, whether we regard the publication as a whole, or only that portion which was most dam-

aging, relating to the going and returning to the room, and remaining there for several hours, there was a failure to justify the publication. We must recall the rule that it is not enough to prove part of a libelous publication to be true, but the proof must be as broad as the charges. As stated in Holmes v. Jones, 121 N. Y. 469, 24 N. E. 703: "Unless the defendant could justify that charge, even if he could justify all the rest of the publication, the plaintiff would have maintained his action, and been entitled to recover some damages." Whether the burden thus cast upon the defendant of proving the charges laid as broadly as made was sustained is disposed of adversely to him by the verdict of the jury, with which, based as it was upon conflicting evidence, we have no right to interfere. It is claimed, however, that the error into which the trial judge fell in charging that the defendant's publication was libelous per se is fatal to the judgment. In this connection the appellant urges that a perusal of the article, taken as a whole, would convey the impression to all reasonable men that this plaintiff was the victim of a conspiracy, and was not guilty of any moral fault; and we are referred to another well-settled rule of law, well expressed in Publishing Co. v. McDonald, 11 C. C. A. 155, 63 Fed. 238, as follows:

"Undoubtedly, when the words used are unambiguous, and admit of but one sense, the question of whether or not they are libelous is one of law, which the court must decide. Equally true is it that when the words used are ambiguous in their import, or may permit in their construction, connection, or application of a doubtful or more than one interpretation, and in some sense be defamatory, the question whether they are such is for the jury." See Woodruff v. Bradstreet Co., 116 N. Y. 217, 22 N. E. 354.

If, therefore, taking the publications as a whole, they did not "impute some moral delinquency or some disreputable conduct to the person of whom they are spoken" (Stokes v. Stokes, 76 Hun, 316, 28 N. Y. Supp. 167); or if the language or pictures did not tend to expose the plaintiff to contempt, ridicule, hatred, or degradation of character (13 Am. & Eng. Enc. Law, 295); or if, in the minds of reasonable people, a doubt could exist as to whether the publication would have such a tendency,—then clearly it was error for the court to hold as matter of law that the article was libelous per se. Whether we take the publication as a whole, in connection with the pictures, or that portion which relates to the plaintiff going into a bedroom with a person other than her husband, and, after being there some time, going to the restaurant for the purpose of getting refreshments, and then voluntarily returning to the bedroom at 10 o'clock, and remaining there until midnight, when the door was burst open by an enraged husband, it is susceptible of but one construction, reflecting, if true, on the plaintiff's character for delicacy and chastity and marital fidelity. Or, to use the language of the trial judge:

"The nature of the subject-matter being such as to warrant the conclusion by any person reading it that, if true, it tended to show meretricious relations between a married woman and some other person than her husband, is of itself libelous. It constitutes a libel per se, and the burden, therefore, is upon the defendant, who gave the matter publicity, to show by a fair preponderance of testimony that the statements were true."

We think that the trial judge could have gone further, and said that from the fact that the "dodgers" were circulated before the periodical itself was published, followed, as they were, by such publication, illustrated with a picture, among others, showing the "flight of the accomplice" in his shirt sleeves, and with his coat on his arm, no other inference could be drawn than that the defendant intended to convey the impression that the plaintiff had been engaged in wrongdoing. If there were any advantage in taking the different charges separately, it might be a debatable question whether or not the article was intended to convey the impression that there was a plot of which the plaintiff was the victim. But whether as the victim of such a plot or not, if she was guilty, after arriving at the hotel, of the conduct charged, her moral character in the eyes of all respectable persons would forever be regarded as bad; because, according to the publication, she voluntarily went with a man other than her husband into a bedroom, and, after remaining there, with the door locked, for some time, went with him to the restaurant for refreshments, and again deliberately returned to the bedroom, and remained there two hours, during which time champagne was served; and this seemingly agreeable intercourse in a bedroom was continued until midnight, when it was broken in upon by an enraged husband smashing the door, and finding his wife reclining on the bed, and the paramour escaping in his shirt sleeves, leaving his valise behind him. If this is a fair paraphrase of the article, can it for a moment be contended that a married woman who would so demean herself was entitled to be regarded as a respectable and faithful wife? And would not knowledge that she had been guilty of such conduct estrange from her decent and self-respecting wives and mothers, and have a tendency to expose her to contempt, ridicule, hatred, or degradation of character? We think it would be a reflection cast upon the moral sense and discrimination of the least intelligent of the readers of the National Police Gazette to conclude that such a publication with reference to a married woman did not impute to her some moral fault, and did not asperse her character for chastity; and the trial judge was, therefore, right in holding that the article was libelous per se.

This brings us to the third ground upon which a reversal is sought, namely, the question of damages; the appellant at the outset strenuously insisting that the court fell into error upon the subject of malice, which it was necessary to prove in order to justify the award of punitive damages. The argument is advanced that there is no evidence tending to show that the defendant was animated by any malice or ill will towards the plaintiff, and, therefore, that exemplary damages could be awarded only upon the ground that the publication had been made recklessly, and without a due regard for the truth; and we are again presented with the contention that the account given was singularly accurate and true. As we have already disposed of this contention in discussing the subject of justification, we need not go further than to say that we cannot, in view of the conclusion reached by the jury, conclude that the narrative of what took place was either accurate or true. Whatever doubt may have been cre-

ated by the different expressions in the opinions of our courts, these are now set at rest, and it must be regarded as the settled law laid down in all the later cases that punitive damages are not limited to cases of actual malice, but may be awarded for a libel recklessly or carelessly published, as well as for one induced by personal ill will. Smith v. Matthews, 152 N. Y. 152, 46 N. E. 164; Warner v. Publishing Co., 132 N. Y. 181, 30 N. E. 393; Holmes v. Jones, 121 N. Y. 461, 24 N. E. 701; Id., 147 N. Y. 59, 41 N. E. 409. The jury having decided, therefore, that the article was not essentially accurate or true, they were entitled to award punitive damages, provided they reached the conclusion that the publication was carelessly or recklessly made. As to this, we think that the circumstances preceding the actual publication were such that the jury might well have concluded, as they manifestly did, that the publication was so made. It must be remembered that this was not a daily newspaper, receiving the information over the wire, or hastily gathered and turned in by a reporter, without there being much opportunity for investigation as to its truth; but, in anticipation of the publication, the defendant caused "dodgers" or circulars to be distributed in the community in which the plaintiff lived, calling the attention of the people to the fact that such a publication was about to be issued; thus showing that the publication was deliberate, and that the opportunity for inquiring into the truth of the account intended to be published was afforded. There was no evidence adduced to show from what source the account was derived by the defendant; nor was there any evidence that the slightest inquiry was made, from whatever source received, as to its truth or falsity. As said, therefore, these were significant facts to be considered by the jury in determining whether or not the publication was recklessly or carelessly made; and with their conclusion that it was, they were entitled to award punitive damages, notwithstanding the fact that it was not shown nor claimed that the defendant personally knew the plaintiff, or was actuated by any personal ill will towards her. These same circumstances with reference to the circulation of the "dodger" impair to a great extent the appellant's argument that the damages were excessive. It is not our province to interfere with the subject of damages, which is peculiarly one for the jury, unless it can be seen that the verdict reached has been influenced by partiality, bias, or prejudice; and, in view of the facts appearing, from which the jury could infer that this publication was made without inquiry into its truth, and in disregard of the plaintiff's rights or character, and considering the distribution of the dodger or circular in the very community in which the plaintiff lived, the jury had the right, in their discretion, to punish the defendant, in addition to making reparation to the plaintiff for what they regarded as an injurious, reckless, and wanton publication. In disposing of this branch of the case, we cannot do better than to repeat what has been well said in the case of Smith v. Publishing Co., 178 Pa. St. 502, 36 Atl. 298:

"The license which the press assumes to itself in the ruthless hunt for sensational news. and in the unsparing invasion of private affairs with which the public has no rightful concern, is the disgrace of modern journalism, and one of the greatest

menaces to free institutions. It may well dispose juries in a proper case to give large damages, both compensatory and punitive, and with such verdicts the courts will not be readily moved to interfere."

We have also considered the further contention that the court erred in charging the jury that evidence in mitigation goes only to exemplary damages. Upon this, as upon the question of when punitive damages can, if at all, be awarded, whatever doubts may have formerly existed with regard to the rule, it has been disposed of, so far as this court is concerned, by the case of Wuensch v. Association, 4 App. Div. 115, 38 N. Y. Supp. 607, wherein it is said:

"The rule in this class of actions is that, if the publication is not justified, the plaintiff is entitled to recover his actual or compensatory damages in any event. There can be no mitigation of this kind of damages. Mitigation extends or relates only to punitive or exemplary damages. A party, if entitled to such actual or compensatory damages, must be awarded such damages as the jury may find naturally and necessarily flow from the publication for injury to the plaintiff's reputation and character."

See, also, Prince v. Brooklyn Daily Eagle, 16 Misc. Rep. 188, 37 N. Y. Supp. 250; Bradley v. Cramer, 66 Wis. 303, 28 N. W. 372.

The minor points presented by the appellant may now be briefly examined. It is insisted that the learned trial judge erred in excluding the question asked of the plaintiff by the counsel for the defendant, as to whether she remembered "the issue of the New York Herald of Tuesday, October 22, 1889, containing an article headed 'Wayward Mrs. Young.'" It is urged that, the defendant having pleaded in mitigation of damages the fact that this article had been published in other newspapers, and was published by him in good faith, he should have been permitted to show that fact; and in this connection it is claimed that, where a newspaper article charged as libelous has been taken from another paper, and republished in the belief that it is true, and after investigation of the facts, evidence of such facts may be given in mitigation of damages. Without assenting to the soundness or unsoundness of this rule, it is sufficient for our purposes to say that the question excluded did not go to the extent of showing that the article was taken from another newspaper, or that it was investigated; nor was there any offer to prove any such thing made upon the trial. Standing alone, the fact as to whether or not the plaintiff saw or remembered anything about the article published in the Herald was in no way relevant.

Another error assigned is that relating to the following charge:

"It is further admitted that before the publication of the article and pictures complained of, and the issuance to the public of the paper containing the article and pictures, the defendant caused to be widely circulated in the town of Montclair, New Jersey, where the plaintiff then resided, a certain circular or handbill, which is in evidence before you, calling the attention of the public to the paper which was about to issue, and in which appeared the article and pictures in question."

By his answer the defendant admitted that the article and pictures in the periodical, and also the handbill or dodger, had been published and circulated. Therefore the only exception that could be taken was to the statement by the judge that it was widely circulated. His attention, however, was not called specially to such characterization, the discussion turning upon whether the publication and circulation

were or were not admitted, which the judge properly decided, upon construing the pleadings, in the plaintiff's favor; and there was evidence from which the inference could fairly be drawn that the hand-bill was widely circulated in Montclair, one of the witnesses testifying that she had seen it in the hands of some school children in that place. While, therefore, the publication and circulation were admitted, there is no doubt that the question of the extent of the circulation would have been left to the jury, as practically it was by other portions of the charge, and the judge would have had an opportunity to withdraw that statement, if his attention had been specially called to it. This exception was taken after the jury had retired, and it is not now disputed but that the proposition as made was correct, except in the particular pointed out. We think the value of verdicts would be impaired if they were liable to be set aside as the result of an exception taken blindly to an entire proposition of law, but which upon appeal is directed solely against a single word employed by the judge in characterizing an admission made by the pleadings, to which his attention was not directed either before the jury retired or when the exception was taken. Verdicts would be equally insecure were we to reverse this judgment upon the ground of error in permitting the plaintiff's daughter to testify as to her standing in the community. Strictly speaking, this was not a relevant inquiry, because the daughter's standing in the community was entirely immaterial. But it must be remembered that she was a member of the family, living with her mother; and it was but one way of showing what was the standing of the family of which the mother was the head, in the absence of the father. There was no point made upon the trial as to the standing of either the mother or the daughter, and, apart from this question, which was objected to, the jury would naturally have indulged in the presumption, in the absence of evidence to the contrary, that the standing of the daughter was good; and therefore the answer could not have been to any degree injurious. As to the mother, witnesses were produced who testified directly to her character and standing, and the defendant in no way attempted to assail or weaken their testimony, giving no evidence upon that subject.

We are left, therefore, to consider but one additional exception, and that relates to the so-called improper remarks of the counsel for the plaintiff in persisting, both in his opening and during the course of the trial, in bringing before the jury the fact that the plaintiff's husband and Richardt had been indicted and convicted for conspiracy in New Jersey. It is true that the counsel's remarks were subject to criticism. But they were not, in this case, entirely without justification, and, as will be seen from the occurrences upon the trial, no possible injury could have resulted to the defendant therefrom. Thus, in the opening, when the statement was made that two years after the publication of the libel the husband and Richardt were indicted and convicted for the offense of conspiring and plotting against the plaintiff, the objection was made that no such issue was upon trial; and at the request of the

defendant's counsel, the judge instructed the jury that they must not be influenced by such remarks. Subsequently, in the course of the trial, the counsel inserted in questions to some of the witnesses the inquiry whether they knew that Richardt and the husband had been indicted, to which objection was made, and the objection was sustained. It will be noticed that the trial judge at no time instructed counsel that he had not the right to ask the question; and, in counsel's view that it was material, we think he was entitled to present the question in such form as to have it ruled upon, and obtain a proper exception, and he could not, to that extent, be regarded as having exceeded the limits allowed counsel in conducting his side of the case, as long as the court did not direct him to desist from repeating the question. In his charge to the jury, the judge called their attention directly to this matter in the following way:

"And at this point I caution you not to confound the wrong which you may have gathered from the testimony that has been offered, and from what you have heard in the assertion of counsel—the wrong that may have been inflicted upon the plaintiff by her husband and Richardt and others by reason of the alleged plot—with the wrong charged in the complaint in this action. Do not confound the two. Whatever the liability of the defendant may be, he is not to account for or compensate the plaintiff for any wrong she has suffered by reason of the conduct of her husband or Richardt."

From a careful consideration of all that occurred in respect to the efforts of counsel to introduce this line of testimony, and especially in view of the instructions from time to time given by the trial judge, we think that the jury could not have been misled thereby. Thus it would appear that whatever injury or prejudice might otherwise have resulted was entirely removed and cured by the fact that in each instance the court, while according to the plaintiff's counsel his legal right to ask questions in his own way, and have them ruled upon, was careful to take away from him any benefit which he might indirectly attempt to obtain by injecting this extraneous matter into the trial. It will therefore be seen that the conduct of counsel was not such as to constitute reversible error.

Upon an examination of the record, while acceding to the suggestion that the verdict is a large one, we have been unable to find any error which would justify our interfering with the conclusion reached by the jury after a trial unusually free from exceptions, and the issues in which were presented in a full and clear manner to the jury in a charge that was eminently fair and impartial, and which accorded to the defendant all his rights.

The judgment should therefore be affirmed, with costs.

VAN BRUNT, P. J., and PATTERSON, J., concur.

INGRAHAM, J. (dissenting). I concur in the affirmance of this judgment, and wish merely to add a few words to the opinion of Mr. Justice O'BRIEN on the effect of the decision of Wuensch v. Association, 4 App. Div. 115, 38 N. Y. Supp. 607. I do not consider that that case settles in this court the proposition claimed for it,—that in no case can any facts be considered in mitigation

of damages, except punitive or exemplary damages. That case came before the court on a motion to strike out the facts alleged as a "separate and partial defense and in mitigation of damages." Those allegations were clearly inadmissible, either as a defense or in mitigation of damages of any kind. The incidental remark contained in the opinion that "mitigation extends or relates only to punitive or exemplary damages" was not at all necessary to the decision of that case, and could only be held to apply to the particular facts therein alleged, and not as a general statement of the law applicable to all cases of libel. No authorities are cited to sustain the proposition, and it is quite apparent that the question was not argued, or necessary to the decision of the motion then before the court. The question cannot be said to be clearly presented in this case, as it is quite evident from the amount of the verdict that the jury considered that the facts of the publication were such as to justify them in awarding punitive or exemplary damages. The court, in its charge to the jury, expressly instructed them that they were not to award to the plaintiff any damages for that portion of the publication which had been proved to be true. Upon this subject the court charged as follows:

"Did what really occurred there in New Jersey on that evening warrant the account which the defendant published? If it did, then the verdict should be for the defendant; if it did not, then it will be your duty to determine what portion of the matter in question has not been shown by the defendant to be true: and then, did the portion that remains, stripped of the portion that has been shown to be true, inflict any injury or damage upon the plaintiff? Bearing in mind, now, that view of your duty, you will proceed to determine what your verdict shall be."

Thus the court, in directing the jury as to the parts of the publication for which they were justified in avoiding compensatory damages, restricted them to that portion of the publication which was not shown to be true; and as they were limited to a finding of damage for the portion of the publication not shown to be true, the facts which were proved to be true could not be considered by the jury in mitigation of the damages caused by the part of the article not true. Counsel for the plaintiff then stated to the court:

"Your honor has charged the jury that they may take into consideration the evidence adduced on the part of the defendant in mitigation of damages on the question of actual damage. Now, the rule of law is that mitigation only goes to exemplary damages. And I ask you to so charge,"—to which the court answered, "I think that is so."

We must consider this request and remark of the court in connection with the rule as to damage already charged, and I think it amounted to but this: That the court, having restricted the jury, in the consideration of the amount that they should award as the actual damage inflicted upon the plaintiff by the libel, to that portion of the libel which was not true, then stated that the facts proved which had been introduced in mitigation of damages should not be considered by the jury as mitigating the damage actually inflicted upon the plaintiff by the portion of the publication which had been proved to be true. I do not think that that charge was error. Whether or not what the court said to the jury was erro-

neous, and requires a reversal of the judgment, must be considered in relation to the facts of this particular case; and while I think that the remark of the court may be too broad as a general proposition, it would not be an error that would justify us in reversing the judgment if, as applied to the particular facts of this case, and to a rule of law which had been laid down by the court to govern the jury in their disposition of the question of damages, which rule of law had not been objected to by either party, no injury could result to the defendant. The general proposition that in no action for libel or slander could facts alleged and proved in mitigation be considered by the jury in determining whether the actual damage has been in consequence of the whole publication, I do not consider as correct. The rule is stated generally in the case of Wachter v. Quenzer, 29 N. Y. 551, as follows:

"The defendant may set up a justification, or he may allege facts short of a full justification, but giving some color to the charge, by way of modification, or he may do both; and in either case he may prove the facts as they are, though they fall short of a justification; and the jury may take them into consideration for the purpose of mitigating the damages."

This statement of the general rule has been affirmed many times by the courts of this state and by text writers upon the subject. In none of the cases that I have examined has it been expressly held, where the point was directly before the court for adjudication, that in no case can facts be proved which could be considered by the jury in mitigating the actual damage sustained by the plaintiff in consequence of the whole publication as alleged in the complaint. If a party is entitled to prove facts short of a full justification, but which give some color to the charge, and if the jury may take such facts into consideration for the purpose of mitigating the damages, it seems to me that it must be the damages sustained in consequence of the whole publication, and for which the plaintiff would be entitled to recover, if none of the facts alleged in the libel had been true. The amount of the damage that a person libeled is entitled to recover as compensation must necessarily be determined by the jury, not upon any fixed scale which can be stated as settled by a rule of law, but as compensation for the injury received in consequence of the publication of the libel taken as a whole; but that amount can be reduced if it should appear that a portion of the publication was true, for as to the injury inflicted by virtue of the publication of a true statement, no matter how injurious to the person of whom such statement is made, there cannot be a recovery. The cases in which the court has stated that facts in mitigation of damages are evidenced only in mitigation of punitive or exemplary damages are cases in which the facts sought to be alleged were only relevant as showing the want of actual malice on the part of the defendant. An example is in the case of Witcher v. Jones (Com. Pl.) 5 N. Y. Supp. 917, which was affirmed by the court of appeals in 137 N. Y. 599, 33 N. E. 743. There the court says:

"In the absence of privilege, the law conclusively implies malice—i. e. want of legal justification—in the publication of an actionable libel; and, in any event,

the plaintiff is entitled to full compensation for his injury. But when, beyond mere indemnity, the plaintiff seeks to recover exemplary damages, the fact of actual malice in the publication becomes a relevant and material consideration. Hence, in defeat or mitigation of exemplary damages, the defendant may introduce any evidence of which the legitimate tendency is to show that he was not actuated by a wanton or malicious motive; as, for instance, that the libel was uttered negligently, or against his will, or in belief of the apparent truth of the defamatory charge."

This decision, and others of like character, apply only to facts tending to show a want of actual malice on the part of the defendant; and it is clear that in those cases they cannot have the effect of mitigating the actual damage sustained by the plaintiff. But in a case where a publication consists of more than one libelous statement, and the defendant is justified in offering in evidence in mitigation of damages the partial truth of the libel, and such facts are to be considered by the jury in mitigation of damages, it would seem to me to follow that such facts are provable to decrease the damage which would have been sustained by the plaintiff by the publication as a whole, if the defendant had failed to prove the truth of any of the facts alleged which constituted the libel.

I have before stated the reasons why I do not think that the instruction to the jury in this case was to the effect that the facts as proven could not be considered in mitigation of the actual damage sustained by the plaintiff in consequence of this entire publication, for the court had instructed the jury that they were not to consider upon the question of damages any part of the libel which had been proved to be true; and the other facts alleged in the justification apply only to the question of the defendant's malice, and which necessarily were confined to the question of punitive damages.

In the rest of Mr. Justice O'BRIEN'S opinion I concur, and therefore concur in the affirmance of the judgment.

McLAUGHLIN, J., concurs.