William H. Kehoe, Appellant, *v.* New York Tribune, Inc., Respondent.

First Department, May 2, 1930.

*Martin Conboy* of counsel [*David Asch* and *Charles W. Tooke* with him on the brief; *Martin Conboy*, attorney], for the appellant.

*McDonald DeWitt* of counsel [*William P. Chapman, Jr.*, and *Harold L. Cross* with him on the brief; *Sackett, Chapman, Brown & Cross*, attorneys], for the respondent.

MARTIN, J. The plaintiff, a member of the bar of the State of New York, and for a number of years an assistant corporation counsel of the city of New York, seeks to recover damages for libel. The defendant is the publisher of the New York *Herald-Tribune*, a daily newspaper published in and issued from the city of New York, having a general and extensive circulation throughout the city and State of New York and elsewhere.

On October 23, 1926, the defendant published in its paper the following article containing the defamatory matter which is the basis for this litigation.

"KEHOE CONVICTED IN MILK GRAFT, BUYS AN ESTATE.
SENTENCED TO PENITENTIARY, FORMER
CITY OFFICIAL PURCHASES PLACE
AT GARRISON, N. Y.

"GARRISON, N. Y., Oct. 22.— William Kehoe, formerly Assistant Corporation Counsel for New York City, who was convicted in the milk scandal, has purchased from Bertram Delancey Drake a

twelve-room house and estate here. Mr. Kehoe examined the property about five weeks ago and the deal was completed through John P. Donohue & Son, local real estate dealer. The price was not disclosed.

" The property consists of the large home and ten acres of attractively laidout grounds overlooking the United States Military Academy and a wide stretch of the Hudson River.

" Kehoe, who was convicted in New York on a charge of conspiracy to collect graft in connection with importation of ' Bootleg Milk,' was released in $20,000 bail ast September 29. He was sentenced to the penitentiary. Justice Valente granted a certificate of reasonable doubt.

" Some members of Kehoe's family have moved into the home, it was said."

The evidence established that the property described in the above article was purchased by the plaintiff and conveyed to him and his wife by a deed dated August·18, 1926, more than two months prior to the publication of the libel, and that the plaintiff and his family thereafter moved into and occupied the premises.

On the trial evidence was offered not only establishing the falsity of the accusations published in the above article, but its reference to plaintiff. The publication was admitted by the defendant, and no matter in justification or by way of privilege was pleaded or relied on in defense. In substance, the defense sets up that the publication was due to a mistake in identity, and that it was made of and concerning another person and not the plaintiff, whose existence was unknown to defendant. The verdict of the jury established that the publication referred to the plaintiff and that it was false, and that the plaintiff was thereby falsely accused of a serious crime.

The public had become acquainted with the facts in the milk graft cases through numerous articles which had been published by the defendant. The plaintiff contends that in view of the serious nature of the charge made against him, and the odium that attached to the crime falsely attributed to him, the verdict of six cents was inadequate; and that the result was caused by errors of law committed in the course of the trial.

It is urged by plaintiff that it was error to admit evidence of an alleged investigation made before publication. Testimony to show that an investigation had been made before the publication of the article in question was admissible. (*Bush* v. *Prosser*, 11 N. Y. 347.) Where testimony is hearsay and when an investigation is merely superficial, the jury should be instructed that while such testimony is admissible, it may or·may not be of value, depending on the

surrounding circumstances and the good faith and thoroughness of the investigation. That is especially true in a case where those who have made the investigation are not produced and sworn as witnesses.

The most important question requiring consideration relates to the alleged retraction. Section 338 of the Civil Practice Act permits the defendant to prove, in an action for libel, mitigating circumstances. Upon the issue of malice which the law implies from the publication, and of malice in fact, the defendant may urge in mitigation of damages any facts which go to show that there was reasonable ground for believing that what was written was true, although such belief is not a defense in the absence of privilege.

The appellant says the court erred in charging the jury that it should take into consideration the retraction of the defendant in determining the amount of compensatory damages; that the theory of damages adopted by the court being erroneous, the verdict of the jury should be set aside.

Although there may be doubt in some States with reference to the admissibility of such evidence for the purpose stated, this court has consistently adhered to the rule that while such a retraction is admissible for the purpose of reducing punitive damages, it may not be admitted to reduce compensatory damages. There appears to be a difference of opinion on the subject, but the effect of applying the rule that such evidence may be admitted to reduce the amount of compensatory damages is best illustrated by the present case where the jury allowed six cents for a very serious libel.

Retractions are often dilatory, offensive and ineffective. The reluctance of the libeler to make a proper retraction promptly, or, if made, to couch it in proper language, results in aggravating the injury resulting from the libel and increasing the harm. The failure to give a retraction sufficient prominence by placing it in an obscure part of the newspaper, or when made, to phrase it in proper language, makes it worthless. When the libel is published the harm is very often accomplished, and its republication by way of a retraction may accentuate and render it more damaging.

The rule with reference to the admissibility of such evidence appears to have been frequently stated by this court.

In the case of *Young* v. *Fox* (26 App. Div. 261) the court in an opinion by Mr. Justice O'BRIEN said: " Upon this, as upon the question of when punitive damages can, if at all, be awarded, whatever doubts may have formerly existed with regard to the rule, it has been disposed of so far as this court is concerned by the case of *Wuensch* v. *Morning Journal Assn.* (4 App. Div. 115), wherein it is said: ' The rule in this class of actions is that if the publica-

tion is not justified, the plaintiff is entitled to recover his actual or compensatory damages in any event. There can be no mitigation of this kind of damages. Mitigation extends or re ates only to punitive or exemplary damages. A party, if entitled to such actual or compensatory damages, must be awarded such damages as the jury may find naturally and necessarily flow from the publication for injury to the plaintiff's reputation and character.' (See, also, *Prince* v. *Brooklyn Daily Eagle*, 16 Misc. Rep. 188; *Bradley* v. *Cramer*, 66 Wis. 303.) "

In the case of *Remsen* v. *Bryant* (24 Misc. 238; affd., 36 App. Div. 240), Mr. Justice GAYNOR, in setting aside a verdict of the jury for six cents, said: " Malice is not an essential ingredient of the cause of action in the case of an unprivileged slander or libel. In such a case the plaintiff has a right to recover his actual damage regardless of the motive of the defendant, and even though the publication was inadvertent or in absolute good faith. A charge to the jury that if they found no malice the verdict must be for the defendant would be erroneous. There is no such issue of fact. On the contrary, in the case of a slander or libel *per se*, if the defendant has not pleaded and proved the truth as a defense, the court has always to direct a verdict for the plaintiff, leaving only the assessment of damages to the jury. Malice has nothing to do with the question whether the plaintiff shall recover his actual damage in the case of an unprivileged slander or libel, but only with the question of whether smart money shall be added. The plaintiff may never be properly permitted to give evidence of the falsity of the defamatory matter unless in rebuttal of evidence of its truth [*Prince* v. *Brooklyn Daily Eagle*, 16 Misc. Rep. 186; *Ullrich* v. *N. Y. Press Co.*, 23 Misc. Rep. 168; *Shanks* v. *Stumpf*, 23 Misc. Rep. 264; *Cady* v. *Brooklyn Union Pub. Co.*, 23 Misc. Rep. 409]. Nor can the actual damage to the plaintiff be whittled down or mitigated by proof of lack of malice in the defendant in actions of tort. It is only the smart money that can be mitigated or prevented by such proof (*Millard* v. *Brown*, 35 N. Y. 297)."

In the case of *Osterheld* v. *Star Company* (146 App. Div. 388) the court said: " In the very outset of the discussion as to the relevancy or irrelevancy, competency or incompetency of evidence of this character, it is necessary to keep clearly in mind the distinction between compensatory and punitive damages, both recoverable in proper cases for libelous publications. A person libeled is always entitled to recover his actual, otherwise termed compensatory, damages. There can be no mitigation of actual damages. (*Wuensch* v. *Morning Journal Assn.*, 4 App. Div. 115; *Young* v. *Fox*, 26 id. 261, 271.)

"No matter how honest the publisher may have been in his belief in the truth of the statement made, or how free from improper motives, or how he may have been misled by information derived from reliable sources, nevertheless none or all of these things can reduce the award for actual or compensatory damages."

In the case of *De Severinus* v. *Press Publishing Co.* (147 App. Div. 161, 163) the court appraised the value of a retraction: "A retraction was published by the defendant. This goes only to show absence of actual malice, but it does not exonerate it from the consequences of original recklessness."

In the case of *Corrigan* v. *Bobbs-Merrill Co.* (228 N. Y. 58) the court said: "The distinction between the right to compensatory and punitive damages is clear. Actual injury to reputation must be paid for in all events."

In the case of *Turton* v. *New York Recorder Co.* (144 N. Y. 144, 150) the court held that a retraction published after the action had been commenced was admissible. "Where the suit was commenced as this was, without any request for the retraction of the libelous charge, if the defendant promptly after the suit was commenced published a fair and full retraction, we see no reason to doubt that such publication could be proved and submitted to the jury to be considered by them upon the question of exemplary damages. Under such circumstances a retraction after suit brought may be as valuable and effective as one published before, and there is the same reason for the submission to the jury of the one as the other."

And in the case of *Abell* v. *Cornwall Industrial Corp.* (241 N. Y. 327) the Court of Appeals said: "Argument that public policy should forbid a party who has committed a wrong by publishing a false and defamatory story founded on rumor from increasing the harm by giving new circulation to the rumor in the guise of extenuating his own fault, loses much of its force when we recognize the limited purpose for which in any event the evidence might be received. It may not be used to impeach the plaintiff's reputation; it may not be used to deprive the plaintiff of reasonable compensation for damage to that reputation. It can serve only to defeat or reduce punitive damages. The plaintiff may, by waiving such damages, render the evidence irrelevant on the remaining issues. If he insists that the defendant should pay punitive damages, the defendant should be permitted to show that no punishment is due, and that his offense is venial."

We are also of the opinion that the verdict should have been set aside because of inadequacy. The Court of Appeals has said that a verdict for six cents may result in a denial of justice. (*Sanderson* v. *Caldwell*, 45 N. Y. 398, 406.) The verdict in this case has so

resulted. (*Remsen* v. *Bryant*, 24 Misc. 238; affd., 36 App. Div. 240.)

There appears to be as much justification for setting aside a verdict that is inadequate as one that is excessive. In either case if the verdict is contrary to the evidence it is the duty of the court to correct it.

The English courts have considered the subject and held that an inadequate verdict should be set aside.

In *Falvey* v. *Stanford* (L. R. 10 Q. B. 54 [1874]) the court said: "* * *. But the principles by which we think the Court should be governed in granting or refusing a new trial in actions of tort on the ground of insufficiency of damages, are not fully explained in the case referred to, but are, as we conceive, correctly stated by BLACKBURN, J., in his judgment in the case of *Kelly* v. *Sherlock* [L. R. 1 Q. B. 686, at p. 697], viz., that there is no inexorable rule of practice precluding the granting of a new trial on account of the smallness of the damages, but where the smallness of damages shews that the jury have made a compromise, and instead of deciding the issue submitted to them of guilty or not guilty, have agreed to find for the plaintiff for nominal damages only, a new trial will be granted, such a case being in effect as if the jury had been discharged without a verdict. In the present case the words complained of were grossly slanderous, and calculated, if believed, to be extremely injurious to the character of the plaintiff. On the other hand, although there was no proof of any actual damage sustained by the plaintiff, yet there was no evidence whatever that he had done anything to provoke or give the least ground for the slanderous imputation cast upon him, or to shew that he had disentitled himself in any way to claim such a verdict as would be practically sufficient to vindicate his character. Under these circumstances, a finding that the slander was uttered, but that a farthing was sufficient by way of compensation, seems so utterly inconsistent, as to leave little doubt that the question was not duly considered by the jury, and that the verdict was the result of an unwillingness either to find for the plaintiff upon the issue of not guilty, with the natural and logical consequences of such a finding, or to find for the defendant; and that it was a species of compromise, and, in fact, no true verdict at all. This was the impression produced at the time upon the mind of the learned judge before whom the case was tried, who, it must be added, was not satisfied with the verdict. We are of opinion, therefore, that the case ought to be submitted to the consideration of another jury, and that the rule for a new trial should be made absolute."

In a case where it is established that the article was grossly ibelous and that the plaintiff is a man of excellent reputation and

good character, there should be a verdict for substantial damages, unless there are some mitigating circumstances. A verdict for six cents in this case can be accounted for only by reason of the rule of damages enunciated by the trial court which is reflected in the verdict.

The judgment should, therefore, be reversed and a new trial ordered, with costs to appellant to abide the event.

Dowling, P. J., Merrell and O'Malley, JJ., concur.

Judgment and order reversed and a new trial ordered, with costs to the appellant to abide the event.