## TOOMEY v. JONES et al.

No. 17444—Opinion Filed Dec. 14, 1926.

Rehearing Denied March 8, 1927.

**1. Libel and Slander—Petition not Demurrable Where Words Susceptible of Defamatory Meaning.**

Before a demurrer can be sustained to a petition counting on an alleged libelous publication, it must appear that the publication is not reasonably capable of a defamatory meaning and cannot reasonably be understood in the defamatory sense. If an inspection of the publication convinces the court that the alleged defamatory words are fairly capable of the construction put upon them by the plaintiff in his petition, then the question of whether the words were defamatory or of innocent import should be left to the jury for determination under proper instructions.

**2. Same—Publication Libelous if Person Held Forth as Believer in Disobedience to Law and Sabotage.**

If an individual is falsely held forth in a publication to be a person believing in disobedience to law and to be a person believ-

ing in the appropriation, by force and sabotage, of the property of others, such publication tends to expose such person to public hatred, contempt, ridicule and obloquy and to deprive him of public confidence and to injure him in his occupation within the purview of section 495, C. O. S. 1921, although the language of the publication may not charge the commission of any overt criminal act.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Tulsa County; C. S. Walker, Judge.

Action by Paul Toomey against Richard Lloyd Jones and the Tulsa Tribune Company to recover damages for an alleged libel. Judgment for defendants, and plaintiff appeals. Reversed.

Remington Rogers (Phillip N. Landa, of counsel), for plaintiff in error.

Biddison & Campbell, for defendants in error.

Opinion by FOSTER, C. This was an action instituted in the court below by the plaintiff in error, Paul Toomey, as plaintiff, against Richard Lloyd Jones and the Tulsa Tribune Company, defendants in error, as defendants, for a libel based upon a newspaper publication. Parties will be hereinafter referred to as they appeared in the trial court.

It appears from the record that in 1921 a demurrer to the amended petition of the plaintiff was overruled, from which judgment overruling their demurrer the defendants attempted to appeal to the Supreme Court, but the appeal was, by this court, dismissed for the reason that no journal entry of judgment had been entered in the court below. Jones et al. v. Toomey, 115 Okla. 169, 241 Pac. 1105.

Thereafter, and on the 11th day of December, 1925, the defendants obtained permission from the court to file their answer, in said cause, out of time. After plaintiff's motion to strike the defendants' answer had been overruled and after the plaintiff had filed his reply, the defendants, on the 29th day of December, 1925, filed their motion for judgment on the pleadings, which motion was, by the court, sustained, and plaintiff's action dismissed. From this judgment the plaintiff has appealed.

Several errors were assigned, but in our view of the case it is only necessary to determine whether or not the trial court erred in sustaining the motion of the defendants for judgment on the pleadings. A determination of this question is dependent on whether, from an inspection of the petition of the plaintiff, aided by the innuendoes therein, it can be said that the published article in question was libelous. The article complained of was attached to plaintiff's petition as an exhibit, and is as follows:

"Court Room Crowd Cheers Man Freed of Whipping 'Red'

"Salesman Resents Slur on Americans With Fists.

"I hope to see every Damn American Run out of the Country.'

"Paul Toomey, manager of the Kansas City Waffle House No. 4, Main and Fifth streets, is alleged to have made that statement at the corner of Main and Fourth streets late Friday afternoon.

"J. C. Archer, salesman for the Burroughs Adding Machine Co., overheard the remark and promptly set to work upon Toomey. When Toomey was escorted into police headquarters by Traffic Officer McGuire he was bleeding profusely about the face.

"In police court yesterday, Toomey and Archer were placed on trial for disturbing the peace. After Archer had testified that he had, after hearing the remark, asked Toomey to repeat it, which Toomey did, he said, he began using his fists. City Prosecutor A. C. Sinclair asked that the charge against Archer be dismissed.

"Toomey was fined $19 and costs. He was given a severe lecture by the judge, who was outspoken in regretting that he had not been beaten so severely that it would have required hospital treatment to restore him to health.

"Archer was highly commended by the judge, and a court room, crowded to capacity, rang with the applause of spectators as he was commended and dismissed.

"After Toomey had paid his fine he was arrested by Captain George H. Blaine and thrown into jail for investigation by federal authorities, the captain said.

"Exhibit 'B'

"We don't know personally Mr. J. C. Archer, the man who was applauded by a Saturday afternoon police court crowd for knocking him down a disloyal Tulsan, but here's wishing him more power to his good right arm."

It was alleged in plaintiff's petition that the alleged defamatory matter contained in the headline of said published article, to wit: "Court Room Crowd Cheers Man Freed of Whipping 'Red'," was published of and concerning the plaintiff, was false, injured

him in his reputation, business, and standing in the community, and exposed him to public hatred, ridicule, and contempt, to his damage in the sum of $50,000. It was further alleged in said petition as follows:

"That the word 'Red' appearing in quotation marks in said article above quoted is a word which was at the time of said publication known and understood to mean a person subscribing to and believing in the doctrines of Bolshevism and Sovietism and is an approbrious epithet to be applied to a loyal American citizen; that at the time and place of said publication it was intended by said defendants and was understood by the ordinary reading public that the said word 'Red' meant a person who did not believe in obedience to the laws, but who did believe in the doctrine of having all of the workers unite and by violence and sabotage seize and appropriate from their lawful owners, all land and buildings and means of production and transportation; that the said word 'Red' in the sense and meaning above defined had been prior to the said date widely used in many of the newspapers throughout the United State of America, and was a familiar word to the ordinary reading public and readers of the newspapers and was intended by the said defendants, and each of them to describe a person believing in the doctrines above set forth and was so understood by numerous persons reading said newspaper."

No special damages were alleged, and the question is whether, in the absence of such allegation, a cause of action was stated sufficient to withstand a general demurrer. Plaintiff's complaint is that the application of the term "Red" to him in the headline of the newspaper article referred to was defamatory because of the sense in which the word was understood by the persons reading the defendant newspaper.

He alleges that the meaning of the word, as understood by newspaper readers generally and by readers of the defendant, Tulsa Tribune, was to describe a person believing in disobedience to the laws and believing in the doctrine of having all of the workers unite and by violence and sabotage seize and appropriate from their lawful owners all land and buildings and means of production and transportation.

The word "Red," While now a word of common use in newspaper parlance and in the political arena, is, in the common understanding of that term, of recent origin, and appears to have been coined during or immediately after the World War, and was no doubt inspired by the intense feeling engendered by that struggle. This being true,

it is impossible for this court to say that the meaning ascribed to the word by the plaintiff in his petition at the time of its publication on December 5, 1920, attempted to give a defamatory meaning to a word of innocent import or that the innuendo ascribed a meaning to the word of which it was not capable.

If the word is capable of the meaning ascribed to it in the innuendo, however improbable it may appear to be, it then became a question for the jury to say whether the word was in fact so understood by the readers of the publication. Newell on Slander, section 752.

We cannot say that the word "Red" is incapable of being used to designate a person believing in disobedience to the laws or his country and intent upon forcibly seizing and appropriating the property of others, as defined in the innuendo, and if the word is susceptible of the meaning the innuendo seeks to ascribe to it, then it becomes a question for the jury to determine, under all the circumstances, whether it was intended to mean what the innuendo avers it did. As was said by this court in the case of Phoenix Printing Co. v. Robertson, 80 Okla. 191, 195 Pac. 487, quoting with approval the following statement from the Alabama Supreme Court:

"'In other words, the court determines whether the words used are susceptible of the meaning sought to be given to them by the innuendo. If this inquiry is decided by the court against the contention of the pleader, this puts an end to it; for it is not permissible to make proof that the words employed were uttered in the sense, or with the meaning, imputed to them in the innuendo. That is not the subject of proof. If it be decided by the court that the words are susceptible of the meaning the innuendo seeks to ascribe to them, then it becomes a question for the jury to determine, under all the circumstances, whether they were intended to mean what the innuendo avers they did.'

"* * * The article is not libelous per se, but comes within that class of publications that may have a defamatory meaning or may have an innocent meaning, and that question is to be determined by the jury under proper instructions from the court."

Should the jury find under the relevant testimony adduced at the trial that the word "Red" was understood by the readers of the defendant publication in the sense ascribed in the innuendo, that is to say, that a 'Red' was a person believing in disobedience to law and intent upon forcibly ap-

propriating. all of the property of others, then we think there can be no question, as a matter of law, that the word was defamatory and libelous per se.

In Bratcher v. Gernert et al., 77 Okla. 12, 185 Pac. 1081, this court stated the rule as follows:

"Under section 4956 of our Code (Rev. Laws 1910) a publication is libelous if it exposes the plaintiff 'to public hatred, contempt, ridicule, or obloquy and which tends to deprive him of public confidence or to injure h m in his occupation. * * *' If the language of the publication is such that the words, taken in their most natural and obvious sense, are defamatory and expose the plaintiff to public hatred, contempt, ridicule, or obloquy, or tend to deprive him of public confidence, or to injure him in his occupation, they are libelous per se, and the plaintiff would be entitled, under section 4959, Rev. Laws 1910, to recover general damages, although no special damages were pleaded or proved."

It requires no argument to demonstrate that if an individual is held forth in a publication to be a person conniving at disobedience to law and to be a person believing it to be proper by force, to appropriate the property of others, such publication would tend to expose such person to public hatred, contempt, ridicule, and obloquy, and tend to deprive him of public confidence and to injure him in his occupation within the purview of section 495, C. O. S. 1921, although the language may not charge the commission of any overt criminal act. In Pfitzinger v. Dubs et al., 64 Fed. 696, the Circuit Court of Appeals of the 7th Circuit said:

"The only question in the case is whether the demurrer was properly sustained,—that is to say, whether the words set out in the declaration are actionable, being published of and concerning the plaintiff in a public newspaper; and that depends upon the question whether the words are fairly capable of the construction put upon them by the plaintiff in his declaration. If they are, then the question of the meaning should have been submitted to the jury. It is only where the words are incapable of a construction injurious to the plaintiff's character that the court is justified in taking the case from the jury."

In Culmer v. Canby, 101 Fed. 195, it is said:

"Before a demurrer can be sustained to a petition counting on an alleged libelous publication, it must appear that the publication is not reasonably capable of a defamatory meaning, and cannot reasonably be understood in a defamatory sense. If an inspection of the publication convinces the court that no

such reasonable construction of the language used could give to it a defamatory sense and meaning, a demurrer should be sustained; otherwise, its meaning and interpretation must be left to the jury, under proper instructions as to what constitutes libel."

See, also, Sanderson v. Caldwell, 45 N. Y. 398; Key v. Armstrong, Byrd & Co., 75 Okla. 84, 182 Pac. 494.

It is also proper, we think, to consider the character of the language here involved with reference to the date of its publication. This occurred on the 5th day of December, 1920. At this time the United States had not fully recovered from the animosities engendered by the World War, and it is not too much to say that the evidence should relate to the sense in which the public understood the word "Red" at the time it was used in the publication. We think, in view of the meaning ascribed to the word "Red" in the innuendo, that the trial court erred in sustaining the motion of the defendant for judgment on the pleadings, and that whether or not the word was understood by the public in the sense ascribed to it in the petition should have been left to the jury under proper instructions from the court.

The judgment of the trial court is therefore reversed, and the cause remanded, with directions to the trial court to set aside its judgment on the pleadings. reinstate the cause, and proceed in accordance with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 37 C. J. p. 50, §399; p. 103. §547. (2) 36 C. J. p. 1198. §112; anno. 19 A. L. R. 1521; 17 R. C. L. p. 461; 4 R. C. L. Supp. p. 1134.