[No. 3389.   Jan. 13, 1930.]

WOOD v. HANNETT et al.

[289 Pac. 590.]

Francis E. Wood, of Albuquerque, for appellant.

Mechem & Vellacott and Hanna & Wilson, all of Albuquerque, for appellees.

## OPINION OF THE COURT

WATSON, J.

Francis E. Wood sued the Journal Publishing Company and certain individual defendants for libel, and obtained a verdict of $12,000. This appeal is from a judgment, after verdict, dismissing the complaint upon the ground that it does not state facts sufficient to constitute a cause of action. That judgment followed an order sustaining a motion for new trial, and plaintiff's refusal to plead further.

The question being the sufficiency of the complaint, we insert its essential allegations:

"(4) That in the issue of the evening edition of the Albuquerque Journal aforesaid, published upon the fifteenth day of July, 1927, there was published an article composed and prepared by the defendant, Arthur T. Hannett, in which it was stated among other things the following, referring to this complainant named therein, and the same was generally circulated and read by the public among whom the paper had its circulation, to-wit:

" '* * * That Reed Holloman, while District Judge of the First Judicial District in this year of 1927, entered into a conspiracy with H. C. Denny, attorney of Gallup, New Mexico, H. W. Yersin, Attorney of Gallup, New Mexico, Arthur A. Jones, of Gallup, New Mexico, and Francis E. Wood, of Albuquerque, New Mexico, to seize, gain control of, and operate through receivership proceedings in said Reed Holloman's court, the municipal water works of the Town of Gallup, for the following purposes, to-wit:

" '1. Mulcting the municipal water works for attorneys' and receivership fees.

" '2. To gain control of the patronage incident to the operation of the Gallup Water Works under such receivership.

" '3. Using the receivership of the Gallup Water Works as an instrumentality to gain control of the municipal power plant, and use it to destroy said Arthur T. Hannett's property interest in the Gallup Electric Light and Power Company.'

"(5) That thereafter and in the morning edition of the Albuquerque Journal, published on August 13, 1927, the defendants published and circulated a statement meant and intended to refer to this complainant, containing what purported to be a statement made by H. W. Yersin above mentioned to a representative of the

Burns detective agency employed by the defendant, Hannett, to spy on the Judge and attorneys engaged in the trial of the said cause, which among other things appeared:

" 'Mr. Wood (meaning complainant) and myself are financing this water suit and will receive our only compensation from our fees as attorneys for the receiver, when he is appointed, and if the above procedure was followed we would expect you to stand the expense of this water suit which will probably be in the neighborhood of $1,500, and to pay Mr. Wood and myself a reasonable attorney's fee.'

"(6) In the same issue of said paper there was published what was purported to be some proceedings before a committee of the State Bar then investigating charges against the defendant, Hannett, containing among other things the following:

" 'A bombshell was exploded Friday afternoon at the outset of the hearing on the Gallup Water works conspiracy charges of former Governor A. T. Hannett before the state bar commission.' and purporting further to report statements made by H. W. Yersin before the committee as follows:

" 'Mr. Yersin had to admit the statement was his own and also the agreement. He had to admit that he and Mr. Wood were financing the Gallup waterworks receivership suit, and he testified to going to Albuquerque in the automobile of H. C. Denny to consult with Mr. Wood about the filing of the suit.

" 'The denouement was as complete as ever witnessed in a courtroom. It left the spectators gasping as to how Mr. Yersin had been so completely trapped, until it became known that Frank Delafield, with whom Mr. Yersin had been negotiating, was not the representative of large utility interests, as he purported to be, but a detective who had solved and secured the inside details of the conspiracy to throw the Gallup water works into receivership in Judge Holloman's court, as Mr. Hannett alleged.'

"With reference to the agreement above outlined, it was further stated in such published reports, and purporting to quote from Mr. Yersin's testimony, as follows:

" 'Mr. Wilson proceeded to read the agreement and contract between H. W. Yersin and Frank Delafield, in Yersin's handwriting.

" 'Q. It was your understanding when you took the case that you would get Mr. Wood as your assistant?  A. Yes, sir.

" 'Q. Did you tell Mr. Wood that you thought Mr. Jones would be appointed as receiver?  A. Yes, sir.

" 'Q. Did you tell him you and he would be appointed as attorneys for the receiver?  A. I told Mr. Wood I hoped we would be appointed.

" 'Q. Did Mr. Wood agree to go into this case and finance it with you on your promises of that kind?  A. I told him we stood the best chance of being appointed attorneys for the receiver.

" 'Q. Did you talk with Mr. Wood about this matter that you wrote out in addition to what you wrote? (referring to the statement presented by the detective.)   A. Yes, I did.'

"(7)   That in the evening edition of the Albuquerque Journal of August 13, 1927, there was further published a statement purporting to be made by the detective on such hearing in which he was reported as saying:

" 'Regarding Francis E. Wood's part in the case, Mr. Stanton was asked: "Did he (Mr. Yersin) say anything about the employment of Mr. Wood in connection with the waterworks suit?"

" 'He stated that after contemplating the evidence unearthed in the water suit that he found it necessary to retain another attorney to assist him.   At the suggestion of Judge Holloman and H. C. Denny he had gone to Mr. Wood, Francis E. Wood, and asked him to assist him in this water suit.

" 'Yersin stated that Mr. Wood had wanted to know what recompense he might receive for his labors.   He (Yersin) said that Wood objected to spending his own money, even for railroad fare and other expenses to go to Gallup.   He stated that he had told Wood that Judge Holloman had promised him the job of attorney for the receiver, but that now both of them would have to have the fees that were obtained as attorneys for the receiver. He stated Mr. Wood asked him: "How am I to know that Judge Holloman has promised this?   Yersin then answered that Judge Holloman and Denny were in town and we will go to them and have him tell you."   Yersin stated that they together went to Judge Holloman.   He didn't state when or where, and that Judge Holloman had promised Wood that the receiver would be appointed and that he would receive half of the fees realized from the job as attorney for the receivership.'

"(8)   That in the evening edition of the Albuquerque Journal of August 16, 1927, the following statement, referring to this complainant, appeared in the account of the final action of the committee of the bar association on the hearing, finding all the above charges made by Hannett to be false:

" 'Speculation is rife in Santa Fe as to what action, if any, would be taken by the commission with regard to one or two of the witnesses in the case who are thought to have incriminated themselves, or been incriminated by the testimony brought out.   It is believed, however, that should the bar commission take any action against any of these lawyers or witnesses separate charges would have to be filed in each case and other hearings held.'

"(9)   Having so prepared the public mind by the foregoing articles, the defendants, Arthur T. Hannett, Thomas M. Pepperday, and Homer P. Pickrell, conspiring and confederating together wickedly, maliciously, and feloniously to libel and defame complainant, did on the twenty-second day of November, 1927, at the County of Bernalillo, aforesaid, compose, write, print, and publish and cause and procure and wilfully permit to be published in the aforesaid Albuquerque Journal of that date, of and concerning this complainant, the following false and libelous matter, to-wit:

" 'If the bar commission desires to show its sincerity it ought to take up the cases of Francis E. Wood (meaning this complainant) and H. W. Yersin and others as developed from the testimony in the hearing before the commission.' (Meaning and intending the statements published by them as aforesaid and quoted and copied herein above.)'

"(10) That because of all the matters above referred to that the defendants had published and circulated which were in the public mind, the defendants meant and intended by the matter above complained of to charge, and were understood by the public reading said article to charge, this complainant with the commission of crimes and misdemeanors; and with conduct, the natural consequence of which was to bring him into contempt among honorable persons; in that he had wickedly and unlawfully conspired with a Judge of the District Court to corrupt the administration of justice and to corruptly bargain and agree in advance with said Judge for the decision and judgment in a case to be brought before said Court and Judge; and having so corruptly conspired and bargained, that this complainant, by the promise and use of money, and by agreement to pay the costs and expenses of the suit, induced and persuaded the plaintiff therein to bring and institute a fake and pretended suit without grounds or reasonable cause therefor; and that for such conduct it was so clearly the duty of the bar committee to bring proceedings against this complainant and procure his disbarment or suspension from practice that their neglect or failure to do so would demonstrate that they were not honest or sincere in their decision; all to the damage of this plaintiff in the sum of Twenty-five Thousand ($25,000.00) Dollars."

The sole ground upon which the motion for new trial was granted is

"That the defamatory article complained of is not libelous per se and no special damages are alleged in the complaint, and therefore that the complaint does not state facts sufficient to constitute a cause of action."

██ Appellant does not question that a correct rule of law is here stated, viz., that only in case of publications libelous per se can there be a recovery without allegation and proof of special damages. He concedes that no such damages have been alleged. His contention is that the publication complained of is libelous per se, and that there has been a misapplication of the rule.

In Colbert v. Journal Publishing Company, 19 N. M. 156, 142 P. 146, 149, and again in Ward v. Ares, 29 N. M. 420, 223, P. 766, 767, we adopted the following language of Judge Cooley in defining the term:

"Any false and malicious writing published of another is libelous per se, when its tendency is to render him contemptible or

ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him."

If the publication of November 22d has such tendency, it is well established that resulting general damages are presumed, and that no special damage need be alleged or proven. If that publication tends to charge appellant with crimes, misdemeanors, and misconduct, as alleged by way of innuendo, in paragraph 10 of the complaint, it is undoubtedly libelous per se and actionable, though no special pecuniary injury is alleged. But, as appellant admits, the innuendo cannot enlarge or vary the meaning of the publication.

The first point of controversy is here reached. How shall we determine the tendency of the publication? Appellees say: From its face alone, without reference to any extrinsic fact, though pleaded by way of inducement. Appellant says: In the light of all facts pleaded as known to the reading public. We pass this, because appellees' later contention must be sustained, viz., that even in the light of the facts pleaded as inducement, the publication of November 22d is not susceptible of a meaning rendering it libelous per se. Appellees contend that it contains no hidden meaning; charges nothing against appellant; merely expressing the opinion that testimony developed in a hearing before the bar commission discloses a "case of Francis E. Wood," which should be taken up.

Referring to that testimony, as pleaded by appellant, it would appear that appellant and Mr. Yersin were financing the water works receivership suit on an understanding with the district judge that they would be designated as attorneys for a receiver to be appointed. It is not denied that the testimony was given as reported. It is not alleged that it was published falsely or maliciously. It is alleged, by way of innuendo, that the conduct to which the testimony points would amount to crimes and misdemeanors and would naturally bring appellant into contempt among honorable persons. How, then, can appellant complain of the opinion expressed in the article of November 22d, that the testimony developed a case which ought to be investigated?

But other facts are disclosed by way of inducement. More than four months prior to the publication complained of appellees seem to have directly charged appellant as a party to a so-called conspiracy. On August 16th, in commenting upon the proceedings and the final action of the bar commission, they indirectly stated that one or two witnesses are "thought to have * * * been incriminated by the testimony." What light do these publications throw on the meaning of that of November 22d?

It is appellant's theory that appellees, by the publications last referred to, had prepared the public mind to attach to the last publication a sinister meaning; that, by reason of them, the last publication was intended and accepted as charging appellant with misconduct. It strikes us as a peculiar theory. No similar case has been brought to our attention. Why should appellant pass by this definite charge of a so-called conspiracy to commit the wrongful acts, and the imputation that he has been incriminated, as bases of action, urging them only as background to his claim that another publication is libelous? Substantially all that appellant contends to have been defamatory is directly charged against him in the first publication. Then, if at all, he was libeled, and his damage arose. Yet, he conceives that this was merely preparing the public mind. It seems to us that the publication of November 22d is not the harvest of the seed planted in July. It is a recession rather than an advance. If the informed reader did, in fact, consider that the November publication was meant as a charge of misconduct, it was not because by subtle processes his mind had been prepared to perceive a hidden meaning. It was because of his remembrance of the previous charge, directly made.

It is not to be presumed that, because a newspaper has once libeled a man, every subsequent reference to him is libelous. It cannot be the law that a newspaper may not fairly report or comment upon public proceedings because they concern one whom it has at some time libeled. Assuming, though not deciding, that the July publication was false, malicious, and libelous per se, we cannot see how it can be tacked on to the November article, without entailing such legal consequences.

In the light of all facts alleged, we fail to find the publication to have been libelous per se. We need not question that ambiguity may be resolved or obscurity clarified by other utterances. This is not such a case. Upon its face, and in connection with the testimony to which it refers, it is susceptible of but the one meaning; that attributed to it by counsel for appellees. That meaning is not varied by the previous publication of accusations.

So we conclude that the judgment should be affirmed, and the cause remanded. It is so ordered.

BICKLEY, C. J., and PARKER., concur.

SIMMS and CATRON, JJ., did not participate.