MIGUEL GARRIGA, Plaintiff, *v.* GEORGE RICHFIELD, Defendant.

Supreme Court, Special Term, New York County, June 10, 1940.

*Doubin, Cohn & Glickstein* [*Sidney Elliott Cohn* and *Alfred L. Tanz* of counsel], for the plaintiff.

*George Richfield*, defendant, in person.

PECORA, J. The original motion, which was based on the legal insufficiency of the complaint, was granted. The decision, however, was predicated on the ground that the alleged defamatory matter was privileged, owing to the fact that it was embodied in a pleading. As that point was not discussed by counsel upon the original argument, this motion for reargument is granted and the court will proceed to a reconsideration of that original motion.

The factual background of this litigation is rather unusual.

In April, 1939, the present defendant, Richfield, brought an action in this court against the present plaintiff, Garriga, for slander. In that action Richfield alleged that Garriga spoke these words of and concerning him: " Richfield and John Green are racketeers. They represent the McLane mobsters from Chicago." In paragraph 5 of his complaint Richfield made the further allegation: " That the said words were stated by the defendant because the plaintiff disagrees with the political affiliation of the defendant, namely, the Communist party, and that the said statement was made with actual malice toward the plaintiff."

Thereafter on May 8, 1939, Garriga moved to strike out the latter allegation on the ground that it was " irrelevant, redundant, repetitious, unnecessary, impertinent and scandalous." That motion was granted without opinion by the learned justice at Special Term, to the extent of striking out all of paragraph 5 except the words " and the said statement was made with actual malice toward the plaintiff." No appeal was taken by Richfield from the order entered thereon.

Subsequently Garriga instituted this action for libel against Richfield. In his complaint Garriga charges Richfield with having published a " false, defamatory and libelous statement " of him, consisting of the portion of the above-quoted paragraph 5 in his (Richfield's) complaint for slander which was stricken out by the Special Term. In substance, Garriga asserts that Richfield's statement that Garrigia is affiliated with the Communist party is libelous.

Other allegations in Garriga's complaint are to the effect that he is international vice-president of the Hotel and Restaurant Employees International Alliance and Bartenders International League of America, affiliated with the American Federation of Labor and the Canadian Trade and Labor Council, having approximately 350,000 members in the United States.

Although in form in paragraph 7 of his complaint Garriga charges that the words complained of are libelous *per se,* he nevertheless further alleges:

" *Eighth.* That the defendant, contriving and intending to cause it to be believed that the plaintiff was unworthy of representing members of the said International Union and was incapable of representing said members in collective bargaining negotiations with employers, and intending further to injure the plaintiff in his good name, fame, credit and reputation, caused said complaint and the contents thereof to be issued and published.

" *Ninth.* That by this false, defamatory and libelous statement the defendant herein charged the plaintiff herein with being a Communist and a member of and affiliated with the Communist Party.

" *Tenth.* That the defendant in and by the said publication aforesaid meant and intended to charge and did charge that the plaintiff did not believe in a democratic form of government; that the plaintiff was unworthy to represent members of the said International Union; that the plaintiff was a person whose word was not to be trusted and who did not sincerely represent the members of the said International in negotiations with employers.   *   *   *

" *Fifteenth.* That by reason of the wrongful acts of the defendant and the libel as hereinbefore and in this complaint set forth, the plaintiff has been and will be defamed and *generally* injured in his reputation and good name as a labor leader and trade union executive and in his business and profession." (Italics are the court's.)

Then follows a claim of general damages in the sum of $65,000.

Thus, in addition to the charge that the words complained of are libelous *per se,* Garriga pleads an innuendo and extrinsic facts in order to color those words with a defamatory hue.

We will first examine the question whether the statement that one is affiliated with the Communist party — even though it be false — constitutes a libel *per se.*

Generally speaking, a written false statement which exposes one to public contempt, ridicule, hatred or disgrace, or induces an evil opinion of him in the minds of fair and right-thinking men, in libelous *per se.* (*Sidney* v. *Macfadden Newspaper Pub. Corp.,* 242 N. Y. 208.) The words used are to be construed in accordance with their ordinary meaning, and as persons generally understand them. (*Cafferty* v. *Southern Tier Pub. Co.,* 226 N. Y. 87.)

The words here involved are not esoteric. They have had wide currency for many years. They are commonly understood to mean that the person concerning whom they are published is a Communist, or a member of, or otherwise connected with, the

Communist party. The meanings given to these terms in the latest (1940) edition of Webster's New International Dictionary are as follows:

" Communist, n. 1 — One who believes in Communism in any of the first three senses named, or attempts to put its principles into practice.

" 2. A supporter of the Paris Commune; Communard.

" 3. A member of the Communist Party (which see) in any country, esp. Soviet Russia."

" Communist Party.— A semipolitical party of recent years representing the Socialist radical wing and holding to the tenets and beliefs of Communism (see def. 3 and note). It has quite generally seceded from the Socialists, organizing in many countries but chiefly in Russia. See Bolshevik: Third International, under International."

The same dictionary gives this definition of the term " Third International " under the general heading of " International: " " Third International, called also Communist International, Moscow International, and Red International, an organization founded at Moscow in March, 1919, by delegates from twelve different countries, as a protest against the inactivity and bourgeois character of the Second International and as a call to Communists all over the world to support the Russian Revolution and inaugurate similar movements in other countries. It is still predominantly Russian."

The foregoing expositions are amply supported by authoritative publications of the Communist party itself issued here in America. We will quote from one of these publications, which is included as an exhibit in the Report of the Joint Legislative Committee (N. Y. Legis. Doc. [1939] No. 98) to Investigate the Administration and Enforcement of the Law, filed in 1939, as follows (the references are to pages in the separate volume of exhibits forming part of such report) :

" There is a Communist Party in every country in the world. All of them work for the same end, and all of them adapt their activities to conditions existing in their country. Delegates from each Communist Party gather once in a few years to an international Communist Congress. * * * The Congress meets for two or three weeks and discusses thoroughly the international situation and the situation in every country. Experiences of a world-wide struggle are shared and a general line of further struggles mapped out. The Congress elects an Executive Committee which is the leading body between one congress and the other. *The decisions of the Executive Committee of the Communist International*

*guide the activities of the parties.* The Executive Committee meets at intervals of a few months. * * * Between one meeting and the other a smaller body called Presidium is conducting the affairs of the organization. *The organization is called the Communist International and expresses the common purpose and common decisions of all the Communist Parties of the world. The Communist International (Comintern) gives unity of policy and leadership to the entire revolutionary movement of the world.* * * *

" The Communist Party of the Soviet Union is affiliated with the Communist International. It is the most influential but not the only influential Party in the International. * * * The seat of the Comintern is Moscow because this is the capital of the only workers' and peasants' government in the world, and the Comintern can meet there freely. * * *

" *The Communist Party of the U. S. A. is thus part of a world-wide organization which gives it guidance and enhances its fighting power.*" (P. 122 of exhibits. The quotation is from the publication called " Why Communism? " by M. J. Olgin. The italics are the court's.)

Another pertinent quotation, from " The Communist Party in Action," by Alex Bittelman, is as follows (p. 370):

" *Our Party is the United States Section of the Communist International, which is a World Communist Party,* and each one of us is therefore a member of a World Party. * * * The main line of the structure of the Communist International is as follows:

" The Communist International is made up of various Communist Parties in individual countries, or National sections. The Supreme Governing body of the Communist International is the World Congress consisting of representatives of all the Sections. The World Congress elects the executive committee of the Communist International (E. C. C. I.) and the International Control Commission (I. C. C.).

" *The decisions of the E. C. C. I. are obligatory for all the sections of the Communist International and must be promptly carried out.* The sections have the right to appeal against the decisions of the E. C. C. I. to the World Congress, but must continue to carry out such decisions pending the decisions of the World Congress." (The italics are the court's.)

These pronouncements make it evident that the Communist party in this country is merely a section of a world wide organization; and that it is bound by the decisions and must effectuate the policies of an executive committee chosen every few years by a world congress in which American members inevitably would constitute a small minority. In short, it is a political group

which actually has its roots in foreign lands. It is subject to the absolute control of persons in those lands who owe no allegiance whatever to our country, and who may be or become bitterly opposed to our democratic form of government. Indeed, its members have potentially obligated themselves even to overthrow our government by force or violence, if that be commanded by the foreigners who would usually compose the majority of the Comintern. These conclusions may seem startling. But they flow with inexorable logic from the avowed structural form of the organization.

Attention is called to these matters partly in view of the current public discussion of the question whether an organization constituted as the Communist party is, should be permitted to acquire the legal status of a political party. Grave doubts arise as to whether a person upon becoming a member of that party, does not thereupon take an oath which conflicts with the oath to support our Constitution. As that question can be decided only in our legislative halls, and not by the judicial branch of the government, this court simply poses it for possible consideration. In doing so, this court does not intimate, even remotely, that individuals or organizations may not lawfully advocate the peaceful making of changes in our form of government. That is a constitutional right which should always be scrupulously respected.

The fact remains, however, that the Communist party under existing law, may function as a political party. It may place upon our ballots its candidates for public office — even for the highest in the land — and seek popular support for them. It may, like any other established political party, proclaim its principles and invite public approval of them. At least while it possesses that status and those rights, it cannot be held that it is defamatory *per se* to say of one that he is affiliated with, or a member of, the Communist party, any more than it would be to say that he is a member of any other legally recognized political party. Any rule to the contrary would abridge that freedom of discussion relative to parties, principles and personalities in the political arena, which is so vital to the preservation of our democracy. To deprive our citizens of the right freely to debate political issues, or to allude to the political affiliations of others, is to make a breach in the dike which protects our cherished institutions. Far better it is to preserve that right unhampered — even with the abuses which frequently attend its exercise in the heat of political passion — than to limit it at the possible loss of our constitutional liberties. That right would be restricted at the expense of good government if, for instance, in a community where a political party had fallen

into disrepute on account of evil practices, one could be held generally liable in damages to another for saying of him that he is affiliated with, or a member of, that party.

A further necessity for this rule is, that in many sections of the country — as is well known — a political party may be held in low esteem, because of prejudice, tradition or other equally unworthy reason, so that membership therein may expose one to contempt, hatred or ridicule; whereas in other sections the same political party may enjoy public favor and confidence. Should we, in the former situation, subject a person to liability for general damages for referring to another as a member of the despised party? The question itself echoes a negative answer.

As the alleged defamation is not libelous *per se*, the issue arises whether, in view of the innuendo and extrinsic facts pleaded by the plaintiff, his complaint is sufficient in law. The rule laid down in *O'Connell* v. *Press Pub. Co.* (214 N. Y. 352) is determinative thereof. It was there held that where the words complained of are not in themselves libelous, and recourse is had to extrinsic facts to show their defamatory nature, the plaintiff must aver special damages in order to state a good cause of action. The plaintiff here has utterly failed to do so. Hence, his complaint must be dismissed. This conclusion makes it unnecessary to decide whether the innuendo ascribed by plaintiff to the publication in suit attaches to its words a meaning of which they are not capable.

As has been noted, on the hearing of the original motion, this court dismissed the complaint on the ground that the alleged defamatory publication was non-actionable because of privilege. The plaintiff now urges upon this reconsideration that such privilege was non-existent because the Special Term struck out from Richfield's slander complaint the paragraph which contained the statement upon which the action at bar is based. This court adheres to its original determination for the reason that evidence of the matter so stricken out would be relevant upon the trial of Richfield's slander suit as some proof of malice.

The motion to dismiss the complaint for legal insufficiency is granted. Settle order.