[Civ. No. 11612. First Dist., Div. One. Nov. 27, 1941.]

P. J. GALLAGHER, Appellant, v. JAMES A. CHAVALAS, Respondent.

William H. Hollander for Appellant.

James H. Boyer for Respondent.

KNIGHT, J.—Plaintiff sued to recover general and exemplary damages he claims to have sustained as the result

of an alleged libel. The demurrer to the complaint was sustained without leave to amend, and from the adverse judgment entered pursuant to the order made in that behalf plaintiff appeals. The grounds of demurrer were that the complaint did not state facts sufficient to constitute a cause of action, and in the four particulars specified in the demurrer was ambiguous, uncertain and unintelligible.

In paragraph I of the complaint it is alleged that plaintiff is a citizen of the United States and of the State of California; that on July 17, 1939, he was appointed director of the state relief administration of the state for the county of Alameda, with his principal office in Oakland, and served as such up to and including April 23, 1940. Paragraph II is as follows: ''That said plaintiff is informed and believes, and upon such information and belief alleges the fact to be, that on or about the 6th day of February, 1940, the defendant published, in a letter addressed to, received and read by, Mrs. Mitchell Tyson, 2071 Oakland Avenue, Piedmont, California, Benjamin Mallory, 154 Sonia Avenue, Piedmont, California, T. P. Geraghty, Sacramento, California, and numerous other persons whose identity is at this time unknown to the plaintiff, the following words relating to plaintiff, of and concerning the plaintiff in his capacity and profession as Director of the State Relief Administration of the County of Alameda, and as a citizen of the United States of America, and of the State of California: 'Supplementing our report of December 1939, it is interesting to note *that Patrick J. Gallagher, the SERA director for Alameda County, during the Presidential Campaign of 1936 and thereafter, was an active member of the Communist Party, and known to Soviet circles as an "observer", that is, a secret or "underground" member, who was accorded the privilege of having his identity concealed from the public and most of the C. P. members. Comrade Gallagher and his son, John, were frequent attendants at the meetings of the Communist "fractions" (now called Units) that were held in the rear of the Communist book-store, on the second floor of the building numbered 419—12th Street, Oakland. This bookstore is now known as "The Twentieth Century Book Shop", and is located at 2475 Bancroft Way, Berkeley, and is still a rendezvous for the higher strategists in the Communist ranks. At such meetings Comrade Gallagher asso-*

*ciated with such well known Communists as Carroll Barnes,
George Beers, Roy Nofts, and a Communist speaker named
"Green". During the past six years the Communists in
Alameda County have maintained strong-arm committees or
"Beef Squads", whose function was to compel obedience to
the mandates of the Communist party by force.* These beef
squads and the other C. P. members were advised by the
State leaders that in case of their arrest, or other entangle-
ment with the law, to immediately contact one or more of
the following attorneys: Comrades Gladstein, Grossman &
Margolis, of San Francisco, or Comrade John C. Stirrat of
Oakland, the latter now the manager of the State Compen-
sation Insurance Fund. Upon the recommendation of Com-
rade Stirrat various medical work connected with the State
Compensation Insurance Fund has been recently allocated
to Comrade Dr. Samuel A. Twain of Berkeley, who, a short
time ago, had his medical license suspended on being found
guilty of narcotics charges. Many of the present employees
in the local SERA are now holding their positions through
the influence of Comrades Stirrat and Gallagher, who ac-
tively cooperated with the Workers Alliance and the Labors
Nonpartisan League, the two chief political fronts of "The
Soviet Fatherland". The latter organizations have recom-
mended Comrade Dr. Twain for appointment as medical ad-
visor for the Alameda County SERA. Comrades Knopf and
Colliver, who were recently discharged from the local SERA,
and Comrade Raymond Barry, now employed in Fresno, in
the Department of Immigration & Housing, likewise secured
their positions through the recommendation of Comrade
Stirrat. POLITICAL PURIFICATION LEAGUE OF
CALIFORNIA BY (Signed) JAMES A. CHAVALAS,
Pres. 577—14th Street, Oakland, Calif.' '' (All italics
ours.)

The portions of the publication above italicized are re-
peated in paragraph III of the complaint, and with respect
thereto it is alleged that the words employed therein ''were,
at the time of said publication, known and understood to
mean a person subscribing to the doctrines of Bolshevism,
Sovietism and Communism, and are, each and all of them,
approbrious [sic] epithets when applied to a loyal American
citizen. That at the time and place of said publication it
was intended by the defendant, and it was understood by

the recipients of said letter, that said words above quoted meant a person who did not believe in obedience to Laws, but who did believe in the doctrine of having all workers unite and, by violence and sabotage, seize and appropriate from their lawful owners all lands and buildings and means of production and transportation, and the said words aforementioned were used in the sense and in the meaning above defined and had been, prior to the date of said publication as alleged in Paragraph II hereof, used in many newspapers and publications throughout the United States and were familiar words to the recipients of the said letter mentioned in Paragraph II hereof, and were intended by the defendant to describe a person believing in the doctrines hereinbefore set forth and were so understood by the recipients of said letter. That the quoted words foregoing, falsely described plaintiff and were understood by the recipients of said letter to mean that plaintiff was disloyal to the United States of America, to the State of California, and to the duties of his office as Director of the State Relief Administration of the State of California in and for the County of Alameda, and that plaintiff was unfit to perform the trusts and duties of his said office.'' Plaintiff then goes on to allege: ''That all of the quoted words aforementioned were, and now are, false and untrue, and did injure said plaintiff in his said occupation, in this: That plaintiff was, and now is, in fact, a true, loyal and patriotic citizen of the United States of America and of the State of California; that said plaintiff has always conducted himself with honesty and fidelity, and that by reason thereof enjoyed a reputation for truth, honesty, integrity and fidelity. That by reason of the foregoing plaintiff has been, and is, greatly injured and prejudiced in his reputation as aforesaid, and has suffered great personal embarrassment and mental anguish, and has been exposed to hatred, contempt, ridicule and obloquy, all of which has caused said plaintiff to be shunned and avoided, and the same has had, and still has, and will continue to have, a tendency to injure said plaintiff in his said occupation or any other occupation that he may desire to follow: . . . That said publication was false and defamatory, and was wilfully, falsely, scandalously and maliciously made by the defendant with knowledge of the said falsity and defamatory nature of the said publication, with the intent and purpose to in-

jure plaintiff and plaintiff's reputation, to expose him to hatred, contempt, ridicule and obloquy and to cause him to be shunned and avoided, and with the further intent and purpose to injure plaintiff in his position and occupation as Director of State Relief Administration in and for Alameda County; to blacken his name as a citizen of the United States of America and of the State of California, and with the officials of the Federal and State Administrations. . . . ''
It is our conclusion that the foregoing allegations of the complaint are legally sufficient to entitle plaintiff to have the question of the alleged defamatory meaning of the publication passed upon by a jury.

█ As defined by section 45 of the Civil Code, ''Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation.'' With respect to the question of the sufficiency of a complaint based on said section it is held that where the defamatory utterances are actionable in themselves no innuendoes are necessary, but that if the words have some occult meaning or local signification, or the meaning is ambiguous and susceptible of a harmless as well as an injurious effect, innuendoes are essential to point out the meaning which the plaintiff claims to be the true one, and on which he relies to sustain his action (16 Cal. Jur. 88); and ''if the words are capable of the meaning ascribed to them, however improbable it may appear that such was the meaning conveyed, it is properly the province of the jury to say whether they were in fact so understood'' (Newell on Slander and Libel, 4th ed., p. 589.) █ Moreover, when the plaintiff by innuendo places a meaning on the language uttered, he must abide thereby, and may not, during the trial, set up a different construction (16 Cal. Jur. 89). █ As pointed out in Newell on Slander and Libel (4th ed., p. 599, sec. 546) the presence of the innuendo in fact operates to the advantage of a defendant rather than to his embarrassment for he can either deny having uttered the words or admit having done so but deny they conveyed the meaning imputed to them; or he can plead that the words were true either with or without the alleged meaning; and it is then for the jury to say from the proofs whether the

plaintiff's innuendo is sustained. ▮ In other words, the general rule is that before a demurrer to a complaint containing innuendoes may be properly sustained it must appear that the publication is not reasonably susceptible of the defamatory meaning and cannot reasonably be understood in the defamatory sense pleaded; and that where the words used are susceptible of more than one meaning, one of which is the libelous meaning placed upon them by the plaintiff in the allegations of his complaint, then the question of whether the words are defamatory or of innocent import should be left to the jury for determination under proper instructions, even though the covert meaning ascribed to them be improbable. (*Toomey* v. *Jones,* 124 Okl. 167 [254 Pac. 736, 51 A. L. R. 1066]; *Washington Times Co.* v. *Murray,* 299 Fed. 903 [55 App. D. C. 32], and authorities cited therein; *Pfitzinger* v. *Dubs,* 64 Fed. 696 [12 C. C. A. 399]; *Culmer* v. *Canby,* 101 Fed. 195 [41 C. C. A. 302]; Newell on Slander and Libel, *supra.*)

▮ In the present case, as will be noted, innuendoes are pleaded, and they follow closely those pleaded in *Toomey* v. *Jones, supra,* wherein as here it was alleged that the words claimed to be defamatory were known and understood to mean that the plaintiff was a person subscribing to and believing in the doctrines of Russian Bolshevism and Sovietism; and the related matters pleaded there and here concerning those doctrines and the understanding had thereof generally by the ordinary reading public find substantial support in the decision of the Circuit Court of Appeals of the United States of the Ninth Circuit, written by Circuit Judge Haney and filed on February 23, 1937, in the case of *Branch* v. *Cahill,* 88 Fed. (2d) 545. The trial court in the Toomey case granted the defendant's motion for judgment on the pleadings; but on appeal the Supreme Court reversed the judgment. In doing so, it said in part: "It requires no argument to demonstrate that if an individual is held forth in a publication to be a person conniving at disobedience to law and to be a person believing it to be proper, by force, to appropriate the property of others, such publication would tend to expose such person to public hatred, contempt, ridicule, and obloquy, and tend to deprive him of public confidence and to injure him in his occupation . . . although the language may not charge the commission of any overt criminal act."

 Furthermore it is well settled that if alleged defamatory words are reasonably calculated to induce readers thereof to believe that a person is guilty of a criminal offense and the words are false, they are sufficient to support an action for libel. (16 Cal. Jur. 49.) Here, as will be seen, the alleged defamatory article goes further than stating that in "1936 and thereafter, [plaintiff] was an active member of the Communist Party, and known to Soviet circles as an 'observer', that is, a secret or 'underground' member." It states that during the past six years, which included the several months plaintiff occupied an official position in Alameda County, the Communists in that county "maintained strong-arm committees or 'Beef Squads', whose function was to compel obedience to the mandates of the Communist Party by force." It would seem, therefore, that it is the province of a jury to say whether the latter statement, reasonably construed in the light of the other portions of the article, might be understood as conveying the meaning that at some time during the period mentioned plaintiff was a party to activities amounting to criminal offenses.

In the second cited case, *Washington Times Co.* v. *Murray, supra,* the alleged defamatory article was similar to the one here involved in that it was there stated in effect and in part that the plaintiff was "linked" to the Soviet government as a "secret agent." Innuendoes based on those words were pleaded, and at the close of the testimony the defendant, Washington Times Co., moved for a directed verdict upon the ground that the publication was not susceptible of a libelous interpretation. The motion was denied and the jury returned a verdict in the plaintiff's favor. On appeal the judgment entered on said verdict was affirmed, the court saying in part [p. 906] : "The nature of the Soviet government of Russia, its proclaimed purposes and declared activities, beliefs, and teachings, as commonly understood in this country, are such that the article is clearly capable of being understood in a defamatory sense by the readers thereof, and it was the duty of the court to submit its meaning to the jury."

The defendant relies largely upon the opinion written by a trial judge in ruling on a motion for dismissal in the case of *Garriga* v. *Richfield* (174 Misc. 315 [20 N. Y. Supp. (2d) 544], decided June 10, 1940) ; but it is apparent that for

several reasons the opinion rendered therein cannot be accepted here as a controlling authority. There the action for libel was based on certain words embodied in one of the allegations of a complaint for slander theretofore filed by Richfield against Garriga, and which words were subsequently, on Garriga's motion, stricken from the complaint upon the ground that the allegation in which they were embodied was "irrelevant, redundant, repetitious, unnecessary, impertinent and scandalous." Upon the filing of the complaint for libel in *Garriga* v. *Richfield,* the latter moved for a dismissal upon the ground that inasmuch as the alleged defamatory matter upon which the action was based was embodied in a pleading, it was privileged. The motion was granted, but thereafter the court permitted the motion for dismissal to be re-argued, at which time it was urged and the trial judge held that the alleged defamatory words were not libelous *per se;* and the judge then went on to hold that on account of a technical rule of pleading prevailing in that state the effect of the innuendoes and extrinsic facts pleaded in the complaint in that action could not be considered, because the plaintiff did not "aver special damages." In so holding the court said: " . . . where the words complained of are not in themselves libelous, and recourse is had to extrinsic facts to show their defamatory nature, the plaintiff must aver special damages in order to state a good cause of action. The plaintiff here has utterly failed to do so. Hence, his complaint must be dismissed. This conclusion makes it unnecessary to decide whether the innuendo ascribed by plaintiff to the publication in suit, attaches to its words a meaning of which they are not capable." The technical rule of pleading there invoked does not prevail in this state. ■ Here, as already pointed out, innuendoes and extrinsic facts when necessarily pleaded, form an essential portion of the statement of a cause of action which must be considered in determining the legal sufficiency of the complaint.

■ In further support of the trial court's ruling, defendant in the present case contends that "The complaint herein contains no averment that any of the statements in the quoted report are untrue, nor does it negative the verity of any of the remarks in said published report"; also that appellant "failed to include in his charge of falsity the assertion that he had been an active member of the communist

party in 1936, or any reference to his communist activities. By not pleading that such statements were false plaintiff impliedly admitted them to be true.'' It will be noted, however, that in paragraph III of the complaint wherein the portion of the publication alleged to be defamatory is quoted, plaintiff alleges ''That all of the quoted words aforementioned were, and now are, false and untrue, and did injure said plaintiff in his said occupation, in this: . . . '' With respect thereto defendant argues that by adding the words ''in this'' plaintiff limited his accusation of the alleged falsity of the quoted words to the particulars specified by him in the language following the two added words. It is apparent, however, that if the added words did operate as a limitation of the allegation, such limitation affected only that clause relating to the injuries sustained by plaintiff by reason of the alleged false and untrue words. In any event, further on in paragraph III plaintiff specifically alleges, in broad and unlimited terms, ''That said publication was false and defamatory, and was wilfully, falsely, scandalously and maliciously made by the defendant with knowledge of the said falsity and defamatory nature of the said publication, with the intent and purpose to injure plaintiff and plaintiff's reputation, to expose him to hatred, contempt, ridicule and obloquy and to cause him to be shunned and avoided . . . '' etc.; and in view of such unqualified allegations it cannot be successfully maintained that plaintiff failed to allege that the words of the publication quoted in paragraph III were false.

The first three of the grounds of special demurrer relate to the question of whether or not the alleged defamatory publication justified the construction or innuendo placed upon them by plaintiff. That question has already been disposed of; and since no argument has been presented in support of the fourth ground of special demurrer, it may be deemed abandoned.

The judgment is reversed with instructions to the trial court to overrule the demurrer.

Peters, P. J., and Ward, J., concurred.