440 P.2d 296

**William C. McGAW and Saddlebag Press Publishing Company, Inc., a corporation, Plaintiffs-Appellees and Cross-Appellants,**

v.

**A. A. WEBSTER, Jr., alias Patrick J. Hale, Defendant-Appellant and Cross-Appellee.**

No. 8258.

Supreme Court of New Mexico.

March 25, 1968.

Rehearing Denied May 16, 1968.

Garland, Martin & Martin, Las Cruces, for appellants.

Albert J. Rivera, C. C. Chase, Jr., Alamogordo, Smith & Ransom, Albuquerque, for appellee.

## OPINION

NOBLE, Justice.

William C. McGaw, editor of the "Southwesterner," a newspaper published by Saddlebag Press Publishing Co., Inc., brought an action in three counts against A. A. Webster, Jr. to recover compensatory and punitive damages on account of an alleged defamatory publication by letters sent to certain advertisers of the newspaper. Counts 2 and 3 of the complaint were dismissed by the court. A verdict of the jury awarded plaintiff corporation $20,000 compensatory damages, and judgment was entered pursuant to the verdict. This appeal followed. Plaintiff McGaw and the corporation have presented questions by cross-appeal to be considered only in the event the appeal is determined to have merit.

The complaint alleges that defendant Webster mailed to certain advertisers of the newspaper a letter as follows:

"P. O. Box 1561
Alamogordo, New Mexico
July 19, 1963

"Attention: Advertising Manager
Gentlemen:

May I call your attention, as an advertiser in the 'Southwesterner' of Columbus, New Mexico, to the July 1963 issue, the editorial entitled 'Patriotism is as Patriotism Does'.

Since the communist directive of December 1960 from Moscow calling for an attack on all Anti-Communist organizations within the U. S. (Ref: The New Drive Against The Anti-Communist Program, by the Committee on the Judiciary, United States Senate, Eighty-Seventh Congress, First Session, July 11, 1961, obtainable from the Gov. Printing Office, Pamphlet #609588-0, 25¢), the communists, pro-communists, fellow-travelers, dupes and party-line-faithfuls have been busy composing all manner of smear editorials against patriotic organizations, especially the Pro-American John Birch Society.

I ask if you, as a Pro-American, Anti-Communist businessman, plan to support a newspaper which is, evidently, following the communist party-line in attacking patriotic organizations?

Are your advertising dollars being wisely used when this media's editorial policy is such that it supports communist objectives? The Communist criminal conspiracy has openly "proclaimed it's [sic] dedication to the destruction of the Free Enterprise System.

Mr. Businessman, I ask you to read the July 1963 editorial of the 'Southwesterner' *AND SEE IF YOU CONSIDER IT IS IN GOOD AMERICAN TASTE. and WORTHY OF YOUR SUPPORT.*

"Yours truly,
s/ Patrick J. Hale
Patrick J. Hale"

which, by innuendo, hinted that Webster:

" * * * maliciously intended to lead said firms to believe that the said newspaper was un-American, pro-Communist, or an organ of 'fellow travelers, dupes or party-line-faithfuls,' all terms used by defendant to connote lack of patriotism, or treason or subversion, and intended to lead such advertisers to believe that 'The Southwesterner' was a newspaper which followed the Communist Party line, and

that its editorial policy supported Communist objectives. * * * "

Compensatory and punitive damages were asked, but special damages were neither alleged nor proven.

We need not go beyond our own decisions to determine whether those publications are actionable. Del Rico Co. v. New Mexican, 56 N.M. 538, 246 P.2d 206; Chase v. New Mexico Pub. Co., 53 N.M. 145, 203 P.2d 594; Dillard v. Shattuck, 36 N.M. 202, 11 P.2d 543; and Wood v. Hannett, 35 N.M. 23, 289 P. 590, lay down certain controlling principles to be applied in determining whether the alleged defamatory publication is actionable. If the injurious character of the words appear, not upon their face in the usual and natural meaning, they require an innuendo and may become actionable per quod, that is, the publication must result in special damage to the person complaining. Chase v. New Mexico Pub. Co., supra. Because innuendo was alleged in this case, the defendant argues that the pleading itself refutes the contention that the publication is libelous per se. Del Rico v. New Mexican, supra, said:

"* * * If the words need the aid of an innuendo, they are not per se libelous and the fact that the pleader supplies one furnishes rather persuasive proof of a belief on his part that the statements relied on need it. * * * "

However, the contention that pleading innuendo is conclusive that the statements are not libelous per se was rejected in Young v. New Mexico Broadcasting Co., 60 N.M. 475, 292 P.2d 776.

Libel per se was defined in Chase v. New Mexico Pub. Co., supra, as:

" 'Any false and malicious writing published of another is libelous per se, when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or to hinder virtuous men from association with him.'

*        *        *        *        *        *

"'The term 'per se' means by itself; simply as such; in its own nature without reference to its relation; and in connection with libel, the term is applied to words which are actionable because they of themselves, without anything more, are opprobrious."

To determine whether the publication is libelous per se, the letter alone must be construed, stripped of all insinuations, innuendo, colloquium and explanatory circumstances. Chase v. New Mexico Pub. Co., supra; Young v. New Mexico Broadcasting Co., supra. The innuendo pleaded can neither add to nor enlarge the sense of the words themselves. All innuendo, therefore, must be disregarded. We are required to determine whether the letter itself, and without more, is defamatory on its face, within the four corners thereof.

In construing the claimed defamatory article, the language said to be libelous is to be given its plain and natural meaning and to be viewed by the court as people reading it would ordinarily understand and give it meaning, without knowledge or use of any special facts or circumstances. Furthermore, we are committed to the rule that the language claimed to be libelous must be susceptible of but a single meaning and a defamatory meaning must be the only one of which the writing is susceptible. Del Rico v. New Mexican, supra; Dillard v. Shattuck, supra. When tested by these rules, we must conclude that the letter in this case is not libelous per se, and hence not actionable in the absence of allegations and proof of special damages.

We think it is now the generally accepted view that to write of a person or organization as being "Communist" or a "Communist sympathizer" or as being "Communist oriented" is libelous per se. Utah State Farm Bureau Fed'n v. Nat'l Farm. U. S. Corp., 198 F.2d 20, 33 A.L.R. 2d 1186 (10th Cir. 1952); Joint Anti-Fascist Refugee Comm. v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817; Spanel v. Pegler, 160 F.2d 619, 171 A.L.R. 699 (7th Cir. 1947); Grant v. Reader's Digest Ass'n, 151 F.2d 733 (2d Cir.1945); Gallagher v. Chavalas, 48 Cal.App.2d 52, 119 P.2d 408;

Toomey v. Jones, 124 Okla. 167, 254 P. 736, 51 A.L.R. 1066.

Looking only at the letter itself, attention is called to the fact that Communists have composed smear editorials against patriotic organizations, especially the John Birch Society. Then follow the assertions (1) that the newspaper "is evidently following the Communist party-line in attacking patriotic organizations" and (2) that the paper's "editorial policy is such that it supports communist objectives." Are these statements, in and of themselves, libelous per se?

■ These statements only say that the newspaper is evidently doing one of the things that Communists are doing, i. e., attacking patriotic organizations, and that its editorial policy supports the Communist objective of attacking the John Birch Society. When the language of the letter is examined in the light of the rule that to be libelous per se the language must be susceptible of only a single defamatory meaning, it is apparent that this language is not libelous per se. To say that the newspaper, like Communist organs, has attacked the John Birch Society is not the same as saying that it is "un-American, pro-Communist, or an organ of fellow-travelers, dupes," or is a Communist party-line-faithful. We are not called upon to decide whether the letter is susceptible of the interpretation given to it by plaintiff's innuendo. The fact that it is susceptible of an interpretation that it has attacked the John Birch Society, a patriotic organization, as have Communist organs, requires the aid of innuendo and prevents the publication from being libelous per se.

Having held this writing not to be libelous per se, there can be no recovery because of the failure to allege or prove special damages. Other questions presented and argued, accordingly, need not be considered by us.

Turning now to plaintiffs' cross-appeal, we find it to be without merit. Five points are urged as error by the cross-appeal. Plaintiffs first complain of a protective order which limited the scope of the pretrial deposition of the defendant Webster, and to the court's denial of plaintiffs' motion to amend the first count of the complaint by adding a paragraph alleging in substance that Webster's purpose in sending the letter complained of was in furtherance of a conspiracy to defame both plaintiffs. In view of our holding the publication to be not libelous per se and in dismissing the complaint, the question of whether the protective order unduly restricted pretrial discovery becomes unimportant. The proposed amendment not alleging special damages would not have permitted recovery under any theory and, accordingly, need not be considered by us.

■ Asserting that the letter is libelous per se, plaintiffs rely upon it for substantial support of the allegations of count II, and, accordingly, urge that the dismissal of that count by the court was error. We cannot agree. There was neither an allegation nor proof of special damages. Our contrary determination as to the effect of the letter disposes of the contention. We cannot agree that the allegation that the defendant sought, by the publication, to induce plaintiffs' customers to cease doing business with the plaintiffs amounts to an allegation of special damages. The assertion that the newspaper has lost the business of "certain of its advertisers, and prospective advertisers, and has been, and will in the future be damaged to the approximate extent of $100,000" fails to particularize. As in Del Rico v. New Mexican, supra, "it draws no comparison between what the profits were since the alleged libel as contrasted with their amount in a like period before publication. No names of those known to plaintiffs who ceased advertising because of the letter were alleged, nor did the plaintiffs plead inability to do so. See also Dillard v. Shattuck, supra.

We find no error in the requirement that plaintiffs elect. Counts I and III, in our view, were not alternatives; both sought damages as a result of the alleged defamatory publication.

Our determination that the publication was not libelous per se and that there can be no recovery because of failure to plead or prove special damages disposes of points III, IV and V of the cross-appeal.

It follows that the cause must be reversed and remanded with direction to vacate the judgment appealed from and to dismiss the complaint.

It is so ordered.

CHAVEZ, C. J., and COMPTON, J., concur.

MOISE and CARMODY, JJ., dissent.

MOISE, Justice (dissenting).

The majority recognizes as the law those cases holding it libelous per se to refer to a person or organization in writing as being "communist," "a Communist sympathizer" or as being "Communist oriented." To these terms I would add "fellow traveler" of Communists held to be libelous per se in Grant v. Reader's Digest Ass'n, 151 F.2d 733 (2d Cir. 1945), cited by the majority, and from that case I quote the following pertinent language:

"The lower courts in New York have passed on almost the same question in three cases. In Garriga v. Richfield, 174 Misc. 315, 20 N.Y.S.2d 544, Pecora, J., held that it was not libellous to say that a man was a Communist; in the next year in Levy v. Gelber, 175 Misc. 746, 25 N.Y.S.2d 148, Hofstadter, J., held otherwise. That perhaps left the answer open; but Boudin v. Tishman, 264 App. Div. 842, 35 N.Y.S.2d 760, was an unescapable ruling, although no opinion was written. Being the last decision of the state courts, it is conclusive upon us, unless there is a difference between saying that he is an agent for the Party or sympathizes with its objects and methods. Any difference is one of degree only: those who would take it ill of a lawyer that he was a member of the Party, might no doubt take it less so if he were only what is called a 'fellow-traveler';

but, since the basis for the reproach ordinarily lies in some supposed threat to our institutions, those who fear that threat are not likely to believe that it is limited to party members. * * *"

See also, MacLeod v. Tribune Publishing Co., 52 Cal.2d 536, 343 P.2d 36 (1959); Hermann v. Newark Morning Ledger Co., 48 N.J.Super. 420, 138 A.2d 61 (1958), adhered to at 49 N.J.Super. 551, 140 A.2d 529 (1958); Annot., 33 A.L.R.2d 1196, 1212 (1954).

Here, defendant stated that plaintiff was "following the Communist party-line." If this is any different than calling him a fellow traveler, the distinction escapes me. Neither is the term softened by the statement that this is accomplished through "attacking patriotic organizations" or through supporting "Communist objectives."

"Fellow-traveler" is defined in Webster's Third New International Dictionary, as follows:

"One that sympathizes with and often furthers the ideals and program of an organized group (as the Communist party) without membership in the group or participation in its activities."

What is the difference between saying a person "sympathizes with" or "furthers the ideals and program of the Communist party," and saying he "supports" its objectives or follows the party-line? If there is any real distinction, it is certainly only one of degree. The letter even goes a step further and explains what the Communist conspiracy (party-line) is.

If, as stated by the majority, accusing a person of being a "Communist sympathizer" or being "Communist oriented" is libelous per se, by what manner of reasoning can they conclude that asserting that one follows the "Communist party line" or supports "Communist objectives" is not equally libelous per se? Since, in my view, the explanation advanced in the opinion is unconvincing and the result reached as a consequence thereof in error, I respectfully dissent.

Although not relying on it as a ground for dissent, I would make note of the question in my mind concerning the validity of the approach long since followed by this court wherein the "per se" and "per quod" distinction is drawn in libel cases, and would suggest that we should reexamine the problem with a view to correcting any errors of law present in our decisions. See 4 Nat. Res.Jrl. 590 (1965). This has been done in Oregon. Hinkle v. Alexander, 244 Or. 267, 271, 411 P.2d 829, 417 P.2d 586 (1966).

CARMODY, J., concurs.